### JACKSON, *ex dem.* NEILSON and Wife, *against* M'VEY *and others.*

An attorney or counsel of the plaintiff or defendant, may be compelled to testify whether a deed described by the adverse party is in his possession or not, so as to authorize the other party, on his refusing to produce it, after notice for that purpose, to give *parol* evidence of its contents.

A declaration or confession by one of the lessors of the plaintiff in ejectment, is evidence against all of them.

The evidence of a witness called to prove the contents of a deed which the adverse party has in his possession, in Court, and has refused to produce, after notice for that purpose, is not to be rejected, because the witness, though he had often perused the deed, was unable to recollect any of the *courses* stated in the description of the premises contained in it; the object of the inquiry being to show that the premises in question were included in such deed : and by not producing the deed, when 'ed for, a strong presumption arises against the party, that it does contain the premises, as testified by the witness.

EJECTMENT for land in *Wallkill*, tried at the *Orange* circuit, in *November*, 1818, before Mr. Justice *Van Ness.*

The plaintiff gave in evidence letters patent to *P. V. B. Livingston* and *John Prevost*, dated *May* 26, 1750, for 3,000

acres of land ; and a release in fee for the same land from the patentees to *James Alexander*, dated *May* 28, 1750. It was proved that *James Alexander* died some time between the years 1750 and 1760, leaving one son, *William*, afterwards Lord *Stirling*, who died in the spring of 1783, leaving two daughters, *Catharine* and *Mary*, two of the lessors of the plaintiff. A witness for the plaintiff proved that the premises in question were included within the bounds of the patent, which is only seventeen chains wide. The witness stated, on his cross-examination, that more than thirty years ago, *Duncan Brown* lived on the south east part of the line near the river *Wallkill*, and the premises in question, which were then in woods and unenclosed, claiming the farm he possessed as his own, having purchased it of *James Alexander*; and that *D. B.* died on the farm before the revolutionary war. The defendants' counsel then offered to prove by the same witness, that *Duncan Brown* claimed the premises in question as included within the lands purchased by him of *James Alexander*, which was objected to by the plaintiff's counsel, and overruled by the judge.

The defendants proved that *Duncan Brown* died long before the revolutionary war, and that he lived near, but not upon the premises in question ; the country being then a wilderness. That *Daniel M'Vey*, the husband of the defendant *E. M'Vey* and father of the other two defendants, first entered upon and cleared a part of the premises in question, about twenty-eight years ago. The defendants' counsel then gave notice to the plaintiff's counsel to produce a deed given by *James Alexander* to *Duncan Brown*, dated about the 31st of *May*, 1750, for 993 acres of land, being then the farm on which *D. B.* lived, and the lands adjoining ; and it was proved, by *John Cox*, that about four years ago, he delivered up to *Samuel W. Brown*, one of the lessors of the plaintiff, that deed. It was objected, that the notice to produce the deed being given on the trial, was insufficient. The defendants' counsel then called upon the plaintiff's counsel to testify that the deed was then in Court and in his possession ; this was objected to, but the judge overruled the objection, deciding that it was not within the privilege of the counsel, to refuse to be a witness for that purpose, and

UTICA,
October, 1820.

JACKSON
M'VEY.

that the defendants having proved the deed to be last in the possession of the plaintiff, the counsel were bound to answer the question. The plaintiff's counsel then admitted that he had in his hands, a deed from *James Alexander to Duncan Brown*, for 993 acres of land, in lot No. 18 and 19, in the *Minisink* angle; but refused to produce the deed. *J. Cox* then testified that he was the executor of *John Brown*, the son and executor of *Duncan Brown*, and that the deed above mentioned by him had been, for many years, in his possession, and that he had often perused it, and always supposed the premises in question included in that deed. On being cross-examined, he said, that he had a very imperfect recollection of the boundaries in the deed; nor could he, from his recollection, state a single course which it contained: That he supposed and thought, but did not know, that it included the premises in question: that he had always supposed that the deed was for lot No. 18 in the *Minisink* angle, which is part of the *Minisink* patent. The defendants then offered to prove that *D. B.* in his life time, and his children since his death, had always claimed the premises as part of the land conveyed to him by *James Alexander;* but this was overruled by the judge, unless the defendant first proved an actual possession of the premises by *D. B.* or his heirs. The defendants then called on the plaintiff pursuant to a previous notice, to produce a mortgage executed by *Duncan Dove*, to *Duncan Brown*, for the premises in question, dated *March* 3, 1753; and on the plaintiff's refusing to produce it, *John Cox* testified, that about four years ago, he delivered up the mortgage to *Samuel W. Brown*, one of the lessors, and that he always understood and believed, that the mortgage covered the premises in question. On his cross-examination, he said, that he did not know from any survey or location, that the mortgage included the premises, nor had he any recollection of the boundaries contained in the mortgage. The defendants then offered to prove the declaration of *S. W. B.* one of the lessors, that he claimed the premises under that mortgage, which was objected to by the plaintiff's counsel, but the judge decided that the evidence was admissible. The plaintiff then proposed to abandon the demise from *S. W. Brown*, and the judge decided that the defendants, notwith-

standing the abandonment of such demise, would have a right to prove the declarations of *S. W. Brown.* *James Brown*, a witness for the defendants, then testified, that he was a grandson of *Duncan Brown*, and had heard *Samuel W. Brown* say, that he claimed the premises, and expected to hold them under the ·mortgage, and a quit claim deed.

UTICA,
October, 1820.

JACKSON
v.
M'VEY.

The defendants offered a release in fee from *Daniel Brown*, one of the lessors, dated *October·28*, 1818, of all his right in the premises, to *E. M'Vey*, one of the defendants, which was allowed by the plaintiff to be received, without pleading the same *puis darrein continuance.* The judge was of opinion, that the plaintiff was entitled to recover, and that if the defendants had any title. under the deed from *James Alexander* to *Duncan Brown*, they must sue for a disclosure · of the contents of that deed in the Court of Chancery. The Jury accordingly, found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial : 1. Because evidence had been improperly excluded : 2. For the misdirection of the judge : 3. Because the verdict was against evidence.

*Betts* for the plaintiff. He cited *Jackson* v. *Bowen*, 3 *Caines*, 358. 3 *Johns. Cases*, 109. *Livingston* v. *Schultz*, there cited. 9 *Johns. Rep.* 610. 611. per *Spencer* J. *Jackson* v. *Frier*, 16 *Johns. Rep.* 163. 4 *Burr.* 2484.

*Wisner*, contra.

*Per Curiam.* The attorney was properly required to testify to the fact where the deed was at the time of the trial. (*Brandt* v. *Klein*, 17 *Johns. Rep.* 335.) That case decides, also, that the confession of *Brown*, one of the lessors, was evidence against all the lessors, as he could not be called on to testify. We are of opinion, that under all the circumstances of the case, the jury was misdirected. The deed was in Court, and the plaintiff's counsel refused to produce it. To allow counsel to cross-examine witnesses as to the contents of a deed in their possession, if at all admissible, should never be carried so far as to reject the testimony of witnesses speaking of the contents from me-

mory, because they cannot remember the particular mag-netic courses in a deed. *John Cox* proved, that he was executor of *John Brown*, the son and executor of *Duncan Brown*, and that he had the deed from *James Alexander* to *Duncan Brown* in his possession for many years; that he had often perused it, and always supposed the premises in question within that deed; but he could not recollect the boundaries, nor state from recollection a single course which it contained. We consider the conclusion unsound, that because a witness cannot recollect the courses of the de-scription in a deed, that, therefore, he cannot prove the contents of it. A man may know, that his farm is included in a deed taken from the vendor, without being able from memory to state the particular courses. When a party withholds and suppresses a deed to which his adversary has a right, every intendment should be made against him. We think the evidence of the contents of the deed should have been submitted to the jury, with strong intimations, that they ought to believe the premises to be included in the deed, as if they were not, the plaintiff, by producing it, could show with certainty how the fact was; and that its non-produc-tion, the deed being in Court, was very strong presumptive evidence against the plaintiff.

The mortgage from *Duncan Dove* to *Duncan Brown*, given in the year 1753, was proved by the admissions of *S. W. Brown*, one of the lessors, to cover the premises. The deed from *James Alexander* to *Duncan Brown*, was given in 1750, and the premises were claimed under the deed, and the exercise of ownership exerted by *Duncan Brown* in taking a mortgage. This evidence was very strong to show, that *Duncan Brown* claimed to own the premises, and that the mortgage to him, was taken from *Dove*, on a sale to him, as security for the purchase mo-ney. The fact, then, that the premises had been held for thirty years under *Duncan Brown's* title, would not only defeat the equity of redemption, but would *toll* the right of entry of the real owner.

There must be a new trial, with costs to abide the event of the suit.

　　　　　　　　　　　　　　　　New trial granted.