UTICA,<br>Aug. 1825.

Jackson<br>v<br>Cole.

New trial refused.

---

JACKSON, *ex dem.* SWARTWOUT AND WIFE, *against* COLE.

EJECTMENT for one-fourth of the south part of lot No. 10, in Glen's purchase, in Herkimer county, tried at the Circuit in that county, before WILLIAMS, C. Judge, July 8, 1823.

The parol declarations of one in possession of lands, as to the nature and extent of his interest, no legal title being shown in him, are admissible against him as evidence, and against those who claim under him, unless it appear that there is higher testimony as to the matter sought to be shown by parol.

Where, in ejectment, the defendant gave evidence to show that certain lands of D. C. under whom the lessors of the plaintiff claimed title, were forfeited by an act of attainder, *held*, that this was *prima facie* evidence that the title to the premises in question was once in D. C. ; and that the plaintiff might, without further proof of title in D. C. proceed to deduce a title from him.

Where an act for vesting certain lands of D. C. in C. C. referred to a location and enumeration of the lands of D. C. made, &c., and delivered to the commissioners of forfeitures, and directed them to be appraised by such persons as the commissioners of forfeitures should appoint, and the appraised value to be paid either to the commissioners, or treasurer, &c. ; as against the state, the location and enumeration, thus adopted by the act, are conclusive that the lands mentioned in them belonged to D. C.

An exemplification of a copy of the certificate of the appraisers filed in the *treasurer's* office, having an endorsement by the treasurer upon it, that the original had been delivered to C. C. deceased, and it being shown that it could not be found among the papers of C. C. was held admissible in evidence, though it was the exemplified *copy* of a *copy*.

This copy having been furnished to the treasurer by the commissioners of forfeitures for his information, and as his guide under the act for vesting the land in C. C., may be regarded as an original for some purposes, and especially as against the state, the treasurer having endorsed upon it all he did under it.

Where a state officer, *e. g.* the treasurer, does an act which would be a violation of his duty unless certain terms or conditions had first been performed by an individual ; as between the state and the individual, such performance shall be deemed, *prima facie*, to have taken place.

Under what circumstances a conveyance from a trustee to his *cestuy que trust* is to be presumed.

To what extent the acts of state officers, as the treasurer, surveyor general, &c., shall be evidence against the state.

Manner of proving documents from the comptroller's office.

On the trial, the plaintiff read in evidence a deed from J. O. Hoffman, Eliza Ann Colden, and T. Cooper, to Cole, the defendant, dated January 21, 1798, for 400 acres of land, in lot No. 10, Glen's purchase, including the premises in question.

James Cochran, a witness for the plaintiff, testified, that he knew T. Cooper ; that he died four or five years ago ; that he also knew Catharine, the wife of T. Cooper ; and that she died in 1796, or 1797, leaving issue a son, Colden Cooper, who died without issue several years ago, and a daughter, Alice Ann, who is married to Swartwout the lessor. That Cole, the defendant, a few days before the trial, called on him to subpœna him as a witness, and said he wanted to prove the death of Mrs. Cooper ; that he was sued by Swartwout and wife for part of his land ; that when he bought the land, Cooper only had signed the deed ; *but that the land belonged to his wife.* He also said that if Mrs. Cooper had signed the deed, he should have been perfectly safe.

It was further proved that Mrs. Cooper was the daughter of David Colden ; that she was born about the year 1775 ; that she married T. Cooper in 1792, and died in 1796 or 1797. That David Colden had four children, Mary, wife of J. O. Hoffman, C. D. Colden, Eliza Ann Colden, and Mrs. Cooper.

The defendant's counsel then read the act of attainder of October 22d, 1779, by which David Colden was attainted by name.

The plaintiff's counsel then read in evidence an act entitled, " an act for vesting the estate of D. Colden, deceased, not already sold, in Cadwallader Colden, passed April 21, 1787 ; the first section of which vested all the lands of D. Colden in C. Colden, in trust for the children of D. Colden, and gave the trustee power to maintain suits in his own name. The second section provided, that C. Colden should pay to the commissioners of forfeitures, or to the treasurer, the appraised value of the lands in public securities, and should also deliver to the surveyor general certain papers belonging to the office of the surveyor general of the colony and make and file an affidavit of the delivery of such pa-

pers. The act also gave C. Colden, the trustee, power to mortgage, or sell enough of the lands for the repayment of such moneys as he should advance.

The defendant's counsel objected, that it was not proved that the conditions of this act had been complied with.

The plaintiff's counsel contended, that no one but the people could take advantage of the non-fulfilment of the conditions of the act of 1787; and so the Circuit Judge decided.

But to show the conditions complied with, the plaintiff read a certified paper from the comptroller's office, sealed by the comptroller's seal.

This paper contained a copy of an appraisement of the lands of D. Colden, made pursuant to the act of 1787, in which the premises in question were included, and, at the bottom of it, was a copy of a certificate by the commissioners of forfeitures, dated August 23, 1788, that it was a copy of the appraisement. Then followed a certificate from G. Barker the (then) treasurer, by which it appeared that C. Colden had paid the appraised value of the lands, and that the treasurer had given him a receipt for the money.

It was proved that the lands mentioned in the appraisal were generally held under the children of D. Colden or some of them.

Morse, a witness, swore that he had compared the paper from the comptroller's office with the one on file, and that it was true copy; that the state had never made any claims to these lands; that he had searched among the papers of C. Colden, deceased, the trustee, and that the original of the paper from the comptroller's office could not be found.

The plaintiff's counsel then read in evidence an exemplified copy of the will of Lieut. Gov. C. Colden, from the office of the surrogate of New York; and also a certificate from the surrogate that the original was not in his office, and a like certificate from the secretary of state, that the original will was not among the probate papers deposited in his office.

This will directed Gov. Colden's executors to divide his lands equally among his children. The plaintiff's counsel

then read in evidence an exemplification of the partition deed made by the surviving executor of this will, dated October, 1787, by which it appeared that the premises in question fell to the share of the testator's son David Colden. It was proved that all the lands of Lieut. Gov. Colden were held pursuant to this partition deed.

The whole of the above evidence was received subject to all legal exceptions.

The defendant was admitted to be in possession, and the jury, under the direction of the Judge, found a verdict for the plaintiff for an undivided fourth part of the premises. The additional facts, necessary to present the points decided, will be found in the opinion of the Court.

A motion was now made to set aside the verdict, and for a new trial.

*M. Hoffman*, for the defendant. 1. No title in the lessors was made out. The testimony was not sufficient to establish the seisin of D. Colden. The testimony of Cochran cannot be received as to title. (6 John. Rep. 20.) The very act of subpœnaing witnesses to defend the suit, instead of admitting the rights of the lessors, denied them.

If the title was once in D. Colden, it vested in the people by the act of attainder; and if the act of 1787 divested the people of their estate, it vested the legal estate in C. Colden, not in the children of D. Colden. The former had power to sell or mortgage. The legal estate, therefore, would not be executed by the statute of uses, but would remain in his heirs. (Cruise's Dig. *Trust*, ch. 1, s. 26. 1 Ves. 142. 2 Saund. 11, n. (17). 3 B. & P. 174. 2 T. R. 648.)

2. C. Colden never complied with the conditions of the act of 1787; and, therefore, the title never vested in him. The conditions are all precedent; and until performed, the title remained in the state.

3. The paper from the comptroller's office was improperly received. It was a certified *copy* of a *copy* relative to an appraisal of, and payment for lands. Such a copy is not evidence. (1 Dall. 64.) Inquiry and search for the original should have been made among C. Colden's heirs.

thenticated. The exemplification was from the surrogate of New York; but by the act concerning wills, (1 R. L. 368,) this should have been from the court of probates.

The testimony of Cochran will doubtless be much relied on; but it could not be understood to mean any thing more than that the defendant had a title to his farm from Cooper; and that a claim was now set up to it as his wife's land.

There is nothing from which a conveyance from C. Colden to the children of D. Colden can be presumed.

*J. O. Morse*, contra. 1. The evidence of Cochran, alone, made out a perfect right of recovery in the lessors. The defendant held by virtue of a deed from one of the daughters of D. Colden, and the husbands of two other of his daughters. He took the deed in 1798. Mrs. Cooper having died the year before, T. Cooper, one of the grantors, had no interest except his estate by the curtesy, which expired with him.

Again: both the partition deed and the paper from the comptroller's office, show that the premises belonged to D. Colden before his attainder; and the act of 1787 vests all his lands in C. Colden, in trust for the children of D. Colden.

2. It was not necessary for us to show the conditions of the act of 1787 complied with. None but the people can take advantage of a non-compliance. (Com. Dig. *Condition*, (O). 3 Atk. 134. Co. Litt. 214, *a.*) Had they been a party to this suit, they could not object the non-compliance, without showing office found. (*People* v. *Brown*, 1 Caines' Rep. 416.) The state has made no claim to any of these lands since 1787; but suffered them to be held by the children of D. Colden. Such a lapse of time will warrant a presumption that the conditions have been complied with.

3. It was not necessary, in order to make out our case, to resort to the will of Lieut. Gov. Colden. The partition and possession under it proved, *prima facie*, at least, that the title was in D. Colden, independent of the will.

The defendant is estopped to object that the estate did not pass and become executed by the statute of uses. By his act of taking a title from Cooper, he acknowledged his estate; and we claim under him. Beside, " an estate in a trustee shall not be set up against the *cestuy que trust :*

any thing shall rather be presumed." (*Cowp.* 36, per Ld Mansfield.) The statute, however, did execute the use. The authorities cited on the other side are where the trustees had power to sell the whole estate. In this case the power was to sell only a part, and the power to mortgage a part operated, at most, as a mere charge on the land, and the fee was left to be executed in the *cestuis que use*, subject to a lien which is regarded by the law as merely personal. If, however, the trustee ever had the legal estate, it was only for a sufficient time to re-imburse himself; and this object having been answered, it is now in the *cestuis que use*. (1 Cruise, Dig. tit. 12, *Trust*, s. 5. 3 East, 162.)

*D. Cady*, (same side.) It would be difficult to state an admission more full or unequivocal than the one made by the defendant to Cochran. The declarations of a party in possession, as to his title, are evidence against him, and all claiming under him. (4 John. Rep. 230, 234.) This proposition is illustrated by a variety of cases in our reports, less strong than the present one. (12 John. 96. 18 id. 332.) The case cited against us from 6 John. 20, was an attempt to prove a *transfer* of title by parol. To allow this, would overrule the statute of frauds; but no such consequence follows from receiving the acknowledgment of a defendant who shows no title, as *prima facie* evidence of title in the lessors.

Again: offering the act of attainder in evidence was an affirmation that D. Colden once owned the land. To repel this, we read the act of 1787. The defendant now says D. Colden never owned the premises. Why then did he show the act of attainder?

But we show a title in D. Colden. The commissioners of forfeitures furnished the treasurer of the state with a copy of the location and appraisal, made pursuant to the act of 1787. This included the premises in question. The treasurer received from C. Colden, the trustee, the value of these lands.

The writing from the comptroller's office was not a copy of a copy within the meaning of the rule relied upon. The memorandum made on the copy by the treasurer, constituted it, in one sense, and for the purposes of the present in-

vestigation, an original document. It was, at least, *prima facie* evidence.

*Curia*, per SUTHERLAND, J.    I think the plaintiff is entitled to recover.    The deed from Cooper to the defendant, and his admissions to Cochran that the estate belonged to Mrs. Cooper, and that if she had signed the deed with her husband, his title would have been good, were sufficient, *prima facie*, to establish the fact that Cooper was only tenant by the curtesy, and that the estate belonged to his wife, of whom Mrs. Swartwout, one of the lessors of the plaintiff, is the sole heir.    The admissions of the defendant do not fall within the class of cases, in which it has been held that parol acknowledgments as to the *title* of real estate are inadmissible.    I think it will be found, in all those cases, either that a title had been previously made out, which it was sought to divest by the parol admissions, contrary to the provisions of the statute of frauds, or it appeared from the acknowledgments themselves that there had been written conveyances, and that the admissions, therefore, were not the best evidence that existed in the case.    Thus, in *Jackson* v. *Vosburgh*, (7 John. 186,) after the plaintiff had established his title, the defendant offered to prove a parol disclaimer, by the lessors of the plaintiff, of any right to the premises.    So in *Jackson* v. *Kisselbrack*, (10 John. 336,) the defendant claimed title under an agreement between him and the lessor of the plaintiff, which was held to amount to a lease or present demise.    He also proved the payment of rent.    The plaintiff then offered to show that the defendant had disclaimed holding under him, and had expressly denied his title.    The Court say, if an interest passed to the defendant by the agreement, no subsequent disclaimer by parol can abrogate it; for a freehold interest can not be divested by words *in pais*.    In *Brant* v. *Livermore*, (10 John. 358,) after the lessors of the plaintiff had established their title to the premises in question, the defendant offered to show, that two of the lessors, since the commencement of the suit, had disclaimed all interest or ownership in the land.    The Court say parol evidence of a disclaimer to a title to real property, *otherwise valid*, is inadmissible.    So in *Jackson* v. *Cary*, (16

John. 302,) the defendant had established a clear legal title; and it was attempted on the part of the plaintiff to show that she had repeatedly admitted that she had only a life estate, and that the grantor of the plaintiff had a right to convey the fee subject to her life estate. Ch. J. Spencer says, the parol declarations made by the defendant avail nothing; for, though parol declarations of tenancy have been received, with certain qualifications, parol proof has never yet been admitted to destroy or take away a title.

In *Jackson* v. *Shearman*, (6 John. 19,) it appeared from parol admissions that there had been a written conveyance; and the Court excluded the parol proof, saying that the extent of the title transferred, &c. rested upon higher evidence than upon parol proof of acknowledgment by the party. It rested upon the written assignment of the lease.

But where the party in possession has not established a legal title, his declarations, and the declarations of those under whom he claims, as to the nature and extent of their interest, or as to the right of the plaintiffs, have repeatedly been received in evidence. Thus, in *Jackson* v. *Bard*, (4 John. 230,) declarations of a party under whom the defendant claimed, showing a distrust of his own right, and an admission of the title of the plaintiff, were held admissible. So also in *Jackson* v. *Belknap*, (12 John. 96,) and in *Jackson* v. *M'Vey*, (18 John. 330,) the defendant was allowed to give evidence of the declarations of one of the lessors, to show under what title he held.

But independently of the admissions of the defendant, the evidence of title in the lessors of the plaintiff was, *prima facie*, sufficient. That the premises in question were once the property of David Colden, appears to me to be admitted by the course of the defence upon the trial. Before the plaintiffs had attempted to connect themselves with David Colden, or to show that he was the owner of the property, and the source of their title, the defendant introduced the act of October 22d. 1779, by which the land and real estate of David Colden were declared to be forfeited to, and vested in the people of this state. This evidence had neither force nor pertinency, unless the premises in question were a part of the lands so forfeited. It proceeded upon the admission that the plaintiff had made out a title, *prima facie*, and was

intended to show a title out of the plaintiff, and in the peo-
ple of the state.   To repel this evidence, the plaintiff read
the act of April 21, 1787, for vesting the estate of David
Colden, not already sold, in Cadwallader Colden, in trust
for the children of David Colden, of whom Mrs. Cooper
was one.   The act refers to a *certain location or enumera-
tion* of the lands of David Colden, made by Cadwallader
Colden, on the 1st of August, 1786, and delivered to the
commissioners of forfeitures of the western district; and
directs them to be appraised by such appraisers as the com-
missioners should appoint, and the appraised value to be
paid, either to the commissioners or to the treasurer of the
state for the time being: and certain maps and papers
which were in the possession of David Colden at the time
of his death, and which belonged to the office of the sur-
veyor general, were to be procured, and delivered by Cad-
wallader Colden to the surveyor general, &c. before the
act could take effect.   As against the state, the location
thus referred to and adopted by the act, would be conclu-
sive evidence that the lands mentioned were the lands
which belonged to David Colden.   It was those lands that
were to be appraised and paid for.   The location is spoken
of in the act as having been delivered to the commissioners
of forfeitures.

The exemplification of the copy of the certificate of the
appraisers was competent evidence; and it established the
fact that the premises in question were included in the
location delivered to the commissioners by Cadwallader
Colden of the lands of David; that they had been appraised
pursuant to the statute, and the appraised value paid into
the treasury of the state.   It was objected to this docu-
ment, that it was but the *copy* of a *copy*.   It however ap-
pears from the certificate of G. Barker, the treasurer, en-
dorsed on the document, that the original certificate had
been delivered to Cadwallader Colden, and it was shown
by Mr. Morse that they were not to be found among the
papers of Mr. Colden.   This was sufficient to authorize
the introduction of secondary evidence.

But although this certificate is styled a copy, it may well
be considered an original for certain purposes.   It was the

evidence furnished by the commissioners of forfeitures to the treasurer, as to what lands of David Colden were included in the location mentioned in the act, and of their having been appraised pursuant to the act, in order that he might know what amount to receive from the trustees. The treasurer considered it as affording competent evidence upon those points, as his voucher or authority for receiving payment pursuant to the statute. He accordingly endorsed upon it all that he did under it; the amount received; that he gave a receipt for it to Mr. Colden; but that he gave no deed or conveyance, Mr. Colden resting his title upon the certificate of the appraisers, and upon his receipt for the money; and put it on file in the office. As against the state, it is certainly to be considered an original document; and as verifying all that is contained in it. So far as the treasurer's certificate is concerned, it is original; and proves the payment of the appraised value of the land to the state, from which a previous compliance on the part of the trustee, with all the other requirements of the act, is necessarily to be inferred.

In *Jackson* v. *Belknap*, (12 John. 96,) the lessor claimed title under a deed from the surveyor general, which was given under, and pursuant to the provisions of an act of the legislature, authorizing the surveyor general to sell such lands of one Weatherhead as one Cockburn should discover to have become forfeited by the attainder of Weatherhead; and which had not been previously discovered. This act, and the deed from the surveyor general, were held to afford *prima facie* evidence that the lands mentioned in the deed were lands discovered by Cockburn, and which had been forfeited by the attainder of Weatherhead. The Court say, the surveyor general was a public officer executing a special trust reposed in him by the act. He was only authorized to sell such lands as Cockburn should discover to him to have become forfeited by the attainder of Weatherhead. It is to be presumed, therefore, that due inquiry was made by him; and the title given, in pursuance thereof, is to be received, in the first instance, as given conformably to the requisites of the act. So in this case, the fact that the officers of government, whose duty

it was to see the provisions of the act of 1787 carried into effect, and complied with on the part of the trustee, have proceeded as they could not, consistently with their duty have done, unless the trustee had performed whatever was incumbent on him to do, is *prima facie* evidence of performance on his part. The act of the 27th of January, 1789, passed for the relief of Cadwallader Colden, assumes, and takes it for granted, that he had complied substantially with the act of 1787. I am therefore of opinion that it was sufficiently shown, that the premises in question were included in the location delivered by Cadwallader Colden to the commissioners, as mentioned in the act; that the title of David Colden to the lands was recognized by the act; and that it was therefore unnecessary for the plaintiff to give further evidence on that point; and that a compliance on the part of the trustee with the conditions of the act, was, *prima facie*, established.

But it is said, if the provisions of the act of 1787 were complied with, then the legal estate in the lands of David Colden, mentioned in the act, vested in Cadwallader Colden, and is not shown to have been transferred to the heirs of David. Whether the trust created by the act of 1787, was executed in the children of David Colden by the statute of uses, or not, I do not deem it material to decide; for, admitting that it was not, I am clearly of opinion that a conveyance from the trustee to the *cestuy que trust*, is under the circumstances of this case, to be presumed, if such conveyance was necessary to vest the legal estate in them.

The children of David Colden were, by the very terms of the act, the individuals intended to be benefited by it. The lands of David were declared to be vested in *Cadwallader in trust for them*. The power given to the trustee to sell or mortgage a portion, if necessary, in order to pay the appraised value to the state, was a power given for their benefit. If the trustee advanced it, he was authorized to sell or mortgage for his indemnity. There is no evidence that the money paid by the trustee to the treasurer was his own money, and not money raised and advanced by the

heirs.   But if such be the presumption of law, then it is fairly to be intended, after this lapse of time, either that it was subsequently repaid by the heirs, or that the trustee exercised the power given to him by the act ; and sold enough of the estate to reimburse all his advances.   If so, then the purpose for which the legal estate was vested in him was accomplished ; and it became his duty to convey it to the heirs; and the law will presume that he did his duty. (4 T. R. 682.   Cowp. 46.   3 Burr. 1901.   Doug. 721. 11 John. 456.)   This presumption derives confirmation from the fact, as testified to by Morse, that many portions of the land of David Colden, mentioned in the location and appraisement, had been held for upwards of thirty years under his heirs ; and also from the circumstance, that the defendant himself, as early as 1798, took a conveyance for the premises in question from one of the daughters of David Colden, and the husbands of two others.

Indeed, it may be questionable whether this is not such a recognition of the legal title of the heirs as to preclude the defendant from denying that it passed from the trustee to the *cestuy que trust*.

Holding as I do, that the act of 1787 recognizes the lands, mentioned in the location of Cadwallader Colden, as the lands of David Colden, to be appraised and paid for ; and that the proceedings under that act sufficiently identify them, and show the premises in question to be a portion of them, it becomes unnecessary to trace the title of David Colden farther back.   All the testimony, therefore, in relation to the will of Lieut. Gov. Colden, and the partition and holding in conformity to it, becomes immaterial.

I am therefore of opinion that the plaintiff is entitled to judgment for one undivided fourth part of the premises in question.

New trial denied.