## James M. Johnstone v. Catharine M. Scott and others.

In ejectment for lands described as a certain lot "according to the plat of the village of Portsmouth," the identity of the land may be proved by persons acquainted with it, without the production of the recorded plat.

Deeds of town lots are valid notwithstanding the failure of the proprietors to acknowledge and record the town plat.

And though the deeds refer to the plat and state it to be on record, when it is not, they are still good, and the statement that it is recorded will be rejected as *falsa demonstratio*.

And if the plat be actually recorded, though not legally, it may be used for the purpose of identifying the land described in the deeds referring to it.

But if both parties in ejectment claim through deeds which refer to a plat as recorded, the claim must be regarded, as an admission of the plat, and of its being recorded if a record is necessary.

Where a copy of a map is put in evidence without objection, any right to insist upon the production of the original is thereby waived.

The question discussed whether a tax title of a town lot is valid where the plat of the town has never been recorded.

Where defendant in ejectment undertakes to establish title in himself derived from the same person through whom plaintiff claims, and sets up no other right in himself, *it seems* that he must be regarded as admitting the title of the person through whom he thus claims.

A foreclosure by advertisement is not void by reason of the sheriff erroneously stating the time of redemption, in his certificate endorsed upon the deed, as one year instead of two. To avoid the foreclosure, it must be shown that a tender of the redemption money was actually made within the two years.

A collector's receipt for taxes is an official paper which the law requires him to give, and is therefore evidence of the payment of the tax in suits between third persons.

*Heard January 9th. Decided April 28th.*

Error to Bay Circuit.

Ejectment for certain lots and blocks in Bay City, described in the declaration as being in that part of the village of Bay City which was formerly part of the village of Portsmouth, according to the plat of said village of Portsmouth.

On the trial, it was admitted that Joseph F. Marsac, purchased of the United States fraction number two, and Gardner D. Williams fraction number three, of section twenty-eight, town 14 north of range 5 east. Plaintiff then

offered in evidence a deed from Henry Howard and Gardner D. Williams, describing themselves as trustees of the Portsmouth Company, to Joseph F. Marsac, of certain lots and blocks corresponding in numbers with those in the declaration, and described as "situated in the village of Portsmouth, county of Saginaw and State aforesaid, agreeable to the plat of said village of Portsmouth, as adopted by the Portsmouth Company, which plat and subdivision of said village is recorded in the Register's office in said county of Saginaw, and to which reference is hereby made for a more accurate description of the same." To this the defendant objected, that until there was proof of a plat of the village of Portsmouth, showing property to which the description of the property in question can apply, the deed was inadmissible in evidence: and it was received in evidence subject to this objection.

The plaintiff then gave in evidence, deeds from Joseph F. Marsac to Benois Tromble, from Benois Tromble to Lucretia Chappel, from Lucretia Chappel to James Watson, and from James Watson to the plaintiff, purporting to convey lots in Portsmouth, all of which were described with the same reference to the plat as in the deed from Howard and Williams. Also a deed from the Auditor General to James Watson, of block 168 in Portsmouth, which was covered by the deed from Watson to plaintiff. This deed was given on a sale of the block for the taxes of 1851.

The plaintiff then called as a witness, Benjamin F. Partridge, who was shown a map or plat which purported to be acknowledged by Gardner D. Williams, Henry Howard and Benjamin F. Towne, trustees of the Portsmouth Company, May 5, 1837. The witness testified that this was a lithographic copy of a plat of Portsmouth. The deed from Watson to the plaintiff was then shown him, and the following question proposed: State if you know whether the lands described in that deed are situated on fractions

11 MICH.—P.

two and three in fractional section 28, township 14 north of range 5 east? This was objected to, on the ground that it did not appear that the proprietors of the land had acknowledged any plat of the land laid out as a village. The Court sustained the objection, and declared that the evidence was not competent for the purpose of identifying the land, but a plat must first be proved properly acknowledged by the proprietors. The following question was also overruled on the same ground: Do you know who is in possession of the property described in that deed?

The defendants on their part gave in evidence a mortgage of the lands described in the deed from Tromble to Chappel, in which they were described in the same way; which mortgage was given by Tromble "to Charles L. Richman and Lyon," dated June 24, 1839 (prior to the deed to Chappel), and an assignment to Richman of the interest of "Lyon" therein, endorsed on the back thereof, but not acknowledged or recorded. The defendants then introduced a deed from the sheriff of Saginaw county to Charles L. Richman, given on a statutory foreclosure of said mortgage, dated September 27, 1847, and with a sheriff's certificate endorsed that the sale would become absolute in one year unless the premises were sooner redeemed. This deed was accompanied by proof of the advertisement and sale. Defendants also proved a quit claim deed of the premises from Charles L. Richman to Henry G. Scott, the death of said Henry G. Scott, and that the defendant Catharine Scott is his widow and the other defendants his heirs at law; also a receipt from Clark Moultrop, treasurer of the township in which the premises in controversy were situated, covering the taxes of 1851, for which block 168 was sold to Watson. Plaintiff then gave evidence by Tromble, tending to show payment of the Richman and Lyon mortgage before foreclosure, by money and a horse, and the defendant produced evidence tending to show the contrary.

JOHNSTONE v. SCOTT.

The plaintiff requested the Court to charge the jury, that if they found that both plaintiff and defendant claimed title to the property from Benois Tromble, the defendants were estopped from denying that Tromble had title; and in that case it was not necessary to prove that Tromble had title. This the Court declined, and on the contrary charged that plaintiff must prove a legal title in himself, and the deeds put in evidence did not estop defendants.

The plaintiff also requested the Court to charge, that the deeds from Williams to Marsac, and from Marsac to Tromble, being by lots and blocks according to the plat of Portsmouth, they and all persons claiming under them by such description are estopped from denying the existence of the plat, and that such deeds as between them and their grantees are conclusive evidence of its existence, and of the regularity of its acknowledgment and dedication. This the Court also refused, and charged that the plaintiff must prove that such a plat was made by the proprietors of the land at the date of acknowledgment thereof.

The plaintiff further requested the Court to charge the jury, that two years redemption must be given on the foreclosure of said mortgage, and if not given, the foreclosure was void. The Court charged that the foreclosure would be regulated by the statute in existence at the time the mortgage was executed.

The plaintiff also requested the Court to charge, that the quit claim deed from Richman to Scott conveyed no interest in the land which Richman held under the mortgage, unless the jury find also that the mortgage debt was assigned or transferred with it; that an assignment of the mortgage interest without the debt is a nullity. The Court refused so to charge, and instructed the jury that the note or bond given with the mortgage passes with an assignment of the mortgage, and that the deed from Richman to Scott conveyed such right as the grantor had.

The plaintiff further requested the Court to charge, that

as to the tax title for 1851, the mere production of a receipt signed by the collector, without other proof of payment of the taxes, where his return is required to be under oath, was not sufficient evidence on which to declare the tax title void. This the Court refused, and charged that the receipt was *prima facie* evidence of payment.

Judgment having passed for the defendants, the plaintiff brought error.

*Knight & Jenison,* for plaintiff in error :

1. Where both parties in ejectment claim through a common ancestor or grantor, both are estopped from denying the title of the person from whom they claim : — 5 *Cow.* 259 ; *Meigs,* 3 ; 4 *Dana,* 479 ; *Ibid.* 264 ; 1 *B. Monr.* 291 ; 22 *Ill.* 603 ; 2 *Metc. (Ky.)* 288 ; 5 *Ohio,* 124 ; 23 *Penn.* 199 ; 27 *Ala.* 582 ; 19 *Geo.* 331 ; 2 *A. K. Marsh.* 648 ; 28 *Miss.* 600 ; 3 *Johns.* 332.

2. There is nothing in the law for the acknowledgment and recording of town plats that makes deeds void if the plat is not so acknowledged and recorded, or that affects the doctrine of admission and estoppel. There is no necessity of proving a recorded plat to show title or locality if it can be done without. As between the parties defendants are bound by the recitals in the deeds through which they claim : — 9 *Wend.* 209 ; 7 *Barr,* 378 ; 5 *Cow.* 216 ; 6 *Binn.* 231 ; 4 *Pet.* 82. And the identity of the land may be proved by parol : — 2 *Greenl. Ev.* § 308 ; 6 *Dana,* 418 ; 2 *H. & McH.* 119 ; 6 *Pet.* 341 ; 5 *S. & M.* 329.

3. The assignment from Lyon to Richman was void, because not an assignment of the debt : — 1 *Hill. on Mortg.* 164 ; 3 *Johns.* 42 ; 2 *Cow.* 195 ; 19 *Conn.* 218. Or, at most, it was only a transfer of a naked trust : — 2 *Story Eq. Juris.* § 1016 ; 4 *Kent,* (4th *Ed.*) 194. The debt not being assigned there was no foreclosure. Besides, there could be no legal foreclosure by an assignee whose assignment

is not acknowledged and recorded: — 2 *Comp. L.* § 5178, *sub.* 3.

4. The town treasurer's receipt for taxes was not competent evidence: — 4 *Pick.* 283; 4 *S. & R.* 551; 6 *Binn*' 1; 5 *Vt.* 556; 9 *B. & C.* 938.·

*Sutherland & Miller,* for defendants in error:

1. The property claimed is described only by numbers of lots and blocks on a village plat; therefore no property other than that bearing such a description could be recovered. The burden of proof was on the plaintiff to show that there was property bearing the description. The Court could not take judicial notice that there was such a plat, and the plaintiff must prove it. The allegation in the declaration is descriptive, requiring strict proof: — 1 *Greenl. Ev.* §§ 56, 63, 62; 1 *Smith Lead. Cas. Ed. of* 1855, 738, 740, 755. When a plat is alleged, a *legal* plat is intended, and must be proved by the best evidence—the record or a certified copy. And though the evidence of Partridge might have been proper either before or after the proof of the plat, the Court had a discretion to require the plat to be first produced.

2. Defendants were not estopped from denying the title of Tromble. There was no evidence of their being in possession under any of the deeds proved by them, or that they had possession or claimed title at or before the commencement of the suit. None of the intermediate conveyances from Tromble contained covenants. Upon these facts there can be no estoppel: — 2 *Smith Lead. Cas.* 625, 626; *Sparrow v. Kingman,* 1 *Comst.* 242; *Averill v. Wilson,* 4 *Barb.* 180.

3. If defendants had accepted deeds describing the property as in the deeds proved by them, they would not be estopped from denying a legal plat, "and the regularity of its acknowledgment and dedication," for no such fact is asserted in the mortgage and deeds. Proof that

a plat was adopted by the Portsmouth Company, falls short of establishing this fact; for it does not show that the persons composing that company were . proprietors of the land. Unless the plat covered fractions two and three, none of the persons from whom plaintiff's title was derived were shown to have any title to the lands they undertook to convey.

4. The charge of the Court in reference to the assignment of the mortgage was correct. It does not appear that any note or bond accompanied the mortgage. If any was given, remedy upon it was barred by lapse of time in 1850, when Richman conveyed to Scott. The Court will not presume the existence of a fact not stated for the purpose of overturning the judgment, but every reasonable intendment will be made in its favor. The charge was correct under *Niles v. Ransford,* 1 *Mich.* 338 (343).

5. The tax collector's receipt was evidence. The statute authorizes it to be given, obviously to afford the tax payer evidence of payment.

CHRISTIANCY J.:

The questions put to the witness, Partridge, for the purpose of identifying the lands described in the deeds introduced by the plaintiff, and to show who was in possession, were, we think, clearly competent, and the Court erred in overruling them and excluding the evidence.

The ground upon which these questions were objected to and . excluded by the Court, was that a plat must first be proved, properly acknowledged by the proprietors to entitle it to be recorded. A similar objection had previously been made by the defendants to the introduction of the deed from Howard and Williams to Marsac (the first deed of the series through which the plaintiff claimed) that " until there is proof of a plat of the village to which the description of the property in question in .the plaintiff's declaration can apply, the deeds are inadmissible;" and this

objection was not overruled, but the deeds were received subject to the objection. Both objections seem to have been based upon the idea, that every town, or village, plat not properly recorded by the proprietors according to the statute in reference to town plats (or at least not so executed and acknowledged as to entitle it to record), is so entirely void and illegal that no conveyance describing the lands by reference to such plat only, can be valid—that the description in the declaration which, after designating the lots and blocks by number "according to the plat of said village of Portsmouth," must be understood as referring to a plat legally acknowledged and recorded, or so acknowledged as to be entitled to record, though the declaration does not, in terms, describe it as acknowledged or recorded. Such only seems to be the ground upon which these objections are sought to be maintained by the counsel for the defendants.

We think these grounds wholly untenable. None of our statutes in reference to town plats go so far as to render deeds of conveyance between individuals void, because made by reference to an unacknowledged or unrecorded plat. But any such plat, or any other map or plat, whether to be found in a public office or in the possession of any person, may still be used for the purpose of identifying the land intended to be conveyed, though no description be given except by reference to such plat by which the property conveyed could be ascertained. The proprietors would incur the penalty fixed by the statute for laying out such plat and conveying lands by reference to it, unless executed, acknowledged and recorded according to the requirements of the statute; but the conveyance would still be good between the parties by any description by which the premises could be identified.

The deeds, it is true, refer to a plat adopted by the Portsmouth Company, and state it to have been recorded; but these deeds would, I think, still be good, though the

plat should not in fact have been recorded: the declaration that it was recorded would be rejected as *falsa demonstratio :* as an incidental circumstance of much less importance than the fact of the existence of the plat itself, and therefore a fact about which the parties drawing the deed would be likely to be less careful and precise. See cases cited in *Cow. & Hill's Notes to Phil. Ev.* (*ed. of* 1839), *Note* 942. So if recorded in fact, though not according to law, this record might probably be used as evidence under certain circumstances, and might satisfy the reference in the deed, to the recorded plat.

All that was necessary in the present case was to identify the land intended to be conveyed; and for this purpose, as there was no intelligible description except by reference to the plat, it became necessary to prove a plat adopted by the Portsmouth Company; and, if not waived, the best evidence attainable would have been required; either the original, or the record, or if neither could be found, then the next best evidence attainable. But in this case the strict rule requiring the best evidence was, I think, waived by the defendants. The bill of exceptions states that a map or plat was shown to the witness (Partridge, the surveyor), which purported to be acknowledged by Gardner D. Williams, Henry Howard and Benjamin F. Towne, trustees of the Portsmouth Company, on the 5th of May, 1837. The witness testified that this was a lithographic copy of a plat of Portsmouth. No objection was taken to this testimony. This must be treated as a waiver of the objection which might have been made to the proof by copy in lieu of the original.

But so far as the plaintiff's title might depend upon the deed from the Auditor General for delinquent taxes, a different rule would, I think apply; since the lands could not have been assessed as village lots, with no other description than by reference to such plat, unless the plat had been recorded in fact: — *Rev. Stat. of* 1846, *p.* 105;

JOHNSTONE v. SCOTT.

*Comp. L.* § 1140. And I am strongly inclined to the opinion that the presumption of regularity of proceedings raised by the statute then in force, in favor of a deed for taxes, would not dispense with the proof of such recorded plat. But it is not necessary to decide the point here, as the deed for taxes only covered one of the several blocks claimed in the declaration and mentioned in the deeds under which the plaintiff claimed; and the evidence rejected was clearly admissible as to all the other lots and blocks, and as to this block also, so far as the plaintiff made a title independent of the tax deed.

The defendants introduced a mortgage on the lands in question executed by Tromble (through whom plaintiff claimed by several mesne conveyances) "to Charles L. Richman and Lyon," dated June 24th, 1839, for $136 21, with an assignment of the interest of Lyon to Richman, endorsed on the back; but the assignment was neither acknowledged or recorded. In this mortgage, the premises were described in the same way as in the deeds through which the plaintiff claimed, viz: designating the number of the lots and blocks "agreeable to a plat of said village as adopted by the Portsmouth Company, and recorded in the Register's office for the county of Saginaw," and by no other description. This mortgage was prior to the deed from Tromble, through which the plaintiff claimed (the latter being dated October 3d, 1846).

The defendants proved the foreclosure of this mortgage by advertisement under the statute, and a deed of the sheriff to Charles L. Richman, dated September 28th, 1847, which was the day of sale. The bill of exceptions does not state what this deed purported to convey, whether the whole or any part of the mortgaged premises; but, as no point is made upon this, we will consider it, as the counsel seem to have treated it, as a deed purporting to convey the whole mortgaged premises. On this deed was endorsed the certificate of the sheriff, that the sale would

become absolute in one year, unless the same was redeemed according to law. There was evidence tending to show a payment of most of this mortgage, and an offer to pay the balance; and also testimony tending to controvert the evidence of payment, from which it may be inferred that the sum claimed to have been paid was included in the sum for which the mortgage was foreclosed, though it does not appear for what sum the foreclosure was had.

The defendants also introduced, among other deeds, a quit claim, dated July 27th, 1850, executed by said Richman to Henry C. Scott, purporting to convey all the lots and blocks claimed by the plaintiff in his declaration, and further proved that said Henry C. Scott died in the year 1851, and that the defendant Catherine Scott, was his widow, and the other defendants his heirs at law. The defendants also proved a receipt from the proper township treasurer for the taxes of the year 1851 on the block sold for the tax of that year as shown by the Auditor General's deed, which had been introduced by the plaintiff. The plaintiff's counsel requested the Court to charge, that if the jury find that the plaintiff and defendants both claim title to the property from Tromble, the defendants are estopped from denying that Tromble had title. This the Court refused, and instructed the jury that the plaintiff must prove in himself a legal title, and that the deeds put in evidence by the defendants did not estop them.

It is not denied that if it had been shown that the defendants, or Henry C. Scott, under whom they claimed, had gone into possession under the deed from Richman, they would have been estopped to deny the title of Tromble, through whose mortgage that title was derived. But the plaintiff had been prevented from showing who was in possession, and there is no evidence on the subject. But it does, I think, appear clearly enough from the bill of exceptions, that the defendants claimed title through Tromble. They were under no necessity, it is true, of

JOHNSTONE *v.* SCOTT.

setting up any claim of title in themselves. All they were required to do was to defeat the title of the plaintiff. This would have been as effectually accomplished, had the defendants stopped with the proof of foreclosure and the deed to Richman, as it could be by deriving that title to themselves; and had they stopped here, there might have been no ground for holding that they had admitted any title in Tromble. But they saw fit to go further, and to show a conveyance from Richman to Scott, the death of the latter, and that one of the defendants was his widow and the others his heirs at law. The object of this manifestly was to show the title in the defendants: and for this purpose the testimony might perhaps have been objected to by the plaintiff as entirely irrelevant, not tending in any way to sustain the defense or to weaken the plaintiff's case. But if the defendants saw fit to strengthen the plaintiff's case, by setting up a claim of title in themselves derived through the Tromble mortgage, the plaintiff was not bound to object; and the title thus set up was, I think, equal to an admission in open court, that the defendants claimed title through Tromble, and should therefore have been treated, for the purposes of the trial, as an admission of Tromble's title, dispensing with proof of that title on the part of the plaintiff. Had they also shown another title in themselves not derived from Tromble, the effect might have been different; but as they made no claim of title except through this, the only inference would seem to be that they claimed under this. See *Jackson v. Tuttle*, 9 *Cow.* 233; *Jackson v. Cole*, 4 *Cow.* 587; 1 *Phil. Ev. (by Cowen, Hill & Edwards)*, *p.* 440. The case of *Jackson v. Tuttle* was reversed by the Court of Errors, 6 *Wend.* 213, but upon another point in no way affecting the question of such admission.

For the like reason, also, I think this claim of title under the Tromble mortgage—which describes the property with reference to the plat substantially in the same way

as in the plaintiff's deeds, and states the plat to be recorded — was, as between these parties, an admission of the plat referred to, and of its being recorded, if a record were necessary.

Whether the period of redemption should have been one year or two years, is a question which does not properly arise in the case. To have raised this point, the plaintiff should have shown a tender, or an attempt to redeem within the two years. The foreclosure would not, we think, be void because the sheriff erroneously certified on the back of the deed that it would become absolute in one year, instead of two years. The statute, so far as it imposes the duty of endorsing this certificate, must be looked upon as directory, and his certificate could not alter the legal period of redemption.

The point taken by the plaintiff, that the assignment of Lyon's interest in the mortgage conveyed no interest without showing that his interest in the mortgage debt was also assigned, is equally aside from the case in its present form. It does not appear (although it must have appeared on the trial), whether the foreclosure was in the name of Richman alone, or in the names of Richman and Lyon. Richman was the purchaser on the foreclosure sale; but *non constat* that the foreclosure was not in the names of both mortgagees. Every presumption must be made in favor of the proceedings and judgment of the Court below till the error be made affirmatively to appear.

There was no error in refusing to charge, as requested by the plaintiff, that the receipt for the taxes, signed by the collector, without proof of payment of the taxes, was not sufficient to invalidate the tax deed. The Court was correct in holding the receipt *prima facie* evidence of payment. It does not fall within the rule which excludes hearsay evidence, nor does it rest upon the principle which admits entries made by third persons against their interest, or in the ordinary course of business. The giving a receipt

for taxes by the township treasurer is an *official act*, which the statute *requires* him to perform. The manifest purpose of the statute we think was to furnish the tax payer with written evidence of payment. The action of the treasurer in reference to the payment, receipts and returns for the taxes, are a part of the *res gestae* or "proceedings" upon which the validity of the deed depends. The receipt is therefore *original* evidence; not, it is true, conclusive, but sufficient till invalidated by proof.

The judgment must be reversed, with costs, and a new trial granted.

MANNING J. concurred. MARTIN CH. J. concurred in the result.

CAMPBELL J.:

The objection to Partridge's testimony was not upon the ground that the plat produced was not genuine, nor on the ground that it was not entered on the records of the county. The copy had already been received without objection, and the objection which, if existing, might have been raised, that it had not been recorded in fact, was waived. This left but a single further objection to be taken, which was that the plan was not acknowledged. This might have been well taken, had a question arisen concerning the validity of the record for the purposes contemplated by the statute relative to town plats. But a reference may be had for purposes of identity to any map, public or private, and whether legally made or not. The deed in this case referred to a plat adopted and recorded in the registry of the county. As the case stands, it is to be assumed, in the absence of any specific objection, that the plan produced is the one adopted and recorded in fact. Being used for purposes of identification merely, it makes no difference that it is not a legal record. The witness therefore should have been allowed to answer

the question: — *People v. Beaubien*, 2 *Doug. Mich.* 256. The. want of a legal record could only affect the tax title.

The defendants introduced a mortgage prior to the deed under which plaintiff claims, made by Tromble (the original source of plaintiff's title) to Richman and Lyon, with an assignment from Lyon to Richman, not acknowledged or recorded; and a subsequent foreclosure of this mortgage, and a deed made under it to Richman, the defendant's grantor, which is alleged to be defective because not endorsed with the proper period of redemption. I agree with my brother Christiancy, that such a mistake, if existing, can not destroy the title if otherwise regular. But, in the case before us, the mortgage being made prior to 1843, gave the mortgagee a possessory right to the land: — *Mundy v. Monroe*, 1 *Mich.* 68. The foreclosure, whether regular or not, passed to the purchaser the rights of the original mortgagee: — *Gilbert v. Cooley*, *Walk. Ch.* 494. In such a mortgage (whether it be so with others or not) a deed of the land, or an assignment of the mortgage, entirely silent as to the debt, conveys the mortgage interest: — *Niles v. Ransford*, 1 *Mich.* 338. In whatever way it is viewed, therefore, the title under the mortgage must be regarded as a good possessory title until redeemed.

I agree also that the receipt for taxes, for the reasons given by my brother Christiancy, was properly received in evidence.

I am of opinion that the Circuit Judge was right in refusing to charge that defendants were estopped by their title introduced from disputing the original title of Benois Tromble. There was no evidence to show that defendants went into possession under that title. The deed from Richman to Henry Scott was a quit-claim. It is very well settled that a party may fortify his title by buying in outstanding titles or pretended titles, and that such purchase, unless it is the means of obtaining possession, can not operate by way of estoppel against him. To hold

that merely introducing evidence of such a quit-claim estops the party is equivalent to denying the right altogether; for the right is nugatory if it can not be used. The whole doctrine of estoppel rests in mutuality; and is simply a rule that one who has been enabled, by means of a conveyance or lease, to obtain possession or some other advantage, can not avoid restoring possession to any other person who, by the effect of the same conveyance or act, has become entitled to it. Thus, a landlord who puts a tenant in possession is bound by the lease which binds his tenant, and can not disturb him during the term. The tenant, having enjoyed the term by means of the lease, must restore possession when the lease terminates. So as between mortgagor and mortgagee, the former is bound to permit the latter to retain possession until redemption, and the latter is bound, when thus put in possession, to restore it on redemption. But if a person already in possession should purchase a mortgage, and, upon redemption, be compelled to give up possession, he would be thus forced to restore more than he received, and to lose independent rights. This is not just or reasonable. Reference has been made by Mr. Cowen to *Jackson v. Cole*, 4 *Cow.* 587, and *Jackson v. Tuttle*, 9 *Cow.* 233, as establishing a rule that whenever a defendant introduces evidence which would show or tend to show a divestiture of the title, whatever it may be, which plaintiff relies on in himself or some former source of title, such evidence amounts to an admission that the person thus divested had a good and legal title. No reason or authority was found for such a view by Court or counsel, and I think none satisfactory can be found. The whole doctrine was repudiated in *Tuttle v. Jackson*, 6 *Wend.* 213, reversing the latter case, and holding that a defendant is not ordinarily precluded from showing any number of titles, and that his possession will be presumed to be under the valid one, if not shown to have been otherwise taken. This is in accordance with

the general doctrines. See *Den v. Sharp*, 4 *Wash. C. C.* 609, where the case presented was very nearly identical with the case at bar; and the decision in which was approved by the Court of Errors in 6 *Wend.* 213.

I think the Court below erred in excluding the evidence offered to identify the lands, and that the judgment should be reversed and a new trial granted for this reason; but that there were no other errors made out.