The opinion of the court was delivered by
Tilgiiman, C. J.
Several objections were made to this evidence. 1st. That the commissioners had not certified the taking of the depositions under their seal. This is not a good objection. The usual mode is for the commissioners to affix their seals on the envelop. From the evidence of the prothonotary wc must suppose that this was done in the present instance. The 2d objection was, that it did not appear, at what place the depositions were taken. To this it was answered, that the county where each deposition was taken, was entered in the margin. I think this was sufficient. Being an ex parte commission, no notice of the time and place of taking depositions was to be given to the plaintiff. It was enough therefore, if it appeared, as it did, that the depositions were taken in one of the counties to which the commission was directed. Another objection was, that Russell, who was of Baltimore county, took several depositions in Frederick county. There was nothing irregular in this. There was but one commission directed to several persons residing in different counties, authorizing them or either of them to take depositions, but the authority to each commissioner to act, did not restrict him io the county in which he resided. All the commissioners jointly, might have taken depositions in Baltimore or Frederick county, and so might either of them, severally. The last and strongest exception to these depositions was, that the plaintiff’s counsel was taken by surprise, having had no opportunity of seeing them *327 before the trial. The facts are these. On the 15th of October, 1824, the plaintiff laid a rule on the defendant to return the commission, which rule was obeyed by a return and filing of the commission on the 18th of October, about six weeks before the trial. A few days before the trial, the plaintiff’s counsel inquired of the prof'onotary whether the commission had been returned, who answered, that it had not. At this time, the commission and depositions were in the hands of the defendant’s counsel, who had taken them out of the office for the purpose of making an abstract of the evidence, and the prothonotary forgot that the return had been made. They were brought to the office, by the defendant counsel on the morning of the trial. It did not appear, at what time the papers had been taken out of the office by the defendant’s counsel, nor how long he had kept them, but it was proved, that it was the constant practice for the attorneys on each side, to take depositions out of the office for the purpose of examining them, and taking copies or making abstracts. We must say, that this is a very bad practice. Office papers should remain in the office, where the attornej's may examine them by permission of the prothonotary. And prothonotaries would do well to recollect, that if papers are carried out with their consent, and lost, they are responsible for the consequences. It is said too, that the gentlemen of the bar are in the habit of keeping possession of depositions, taken under rule of court, (not by commission,) as if they were the property of the party who obtained the rule. This is all wrong. The depositions belong to neither party, but are for the use of both, and should be delivered to the prothonotary with all convenient speed, as soon as they have been taken. In the present case, the counsel for the plaintiff’s may have been taken a little off his guard, but, consideringthepractice which has prevailed,I cannot say that there was error in admitting the depositions. There were counsel on each side living in Gcitsyburg, within a short distance of each other. And considering that no rule had been laid for the return of the commission, it might have been expected that the plaintiff’s counsel should make some inquiry of the counsel for the defendant.’ If he had, he would have seen the depositions. There is no reason to suppose, that they were concealed, with intent to surprise, nor does it appear, that the plaintiff’s counsel moved for a continuance of the cause, which, I should suppose, would have been immediately granted, upon proof of surprise.
2. The second bill of exceptions taken by the plaintiff was to the admission of particular parts of the depositions taken under the commission, in which the witnesses swore that Susanna Yagerline, Molly Steer and Margaret King, were women of bad character. It is material, that before this evidence was offered, it had been sworn by one of the defendant’s witnesses, that these women had combined to impose on the testator after he had lost the use ,of his rational faculties, that they kept him in a state of in *328 toxication, and had represented each other as persons of virtue, and good character, and urged him to make his will in their favour, to the exclusion of his own blood relations: and that the subscribing witnesses to the will had made the same representations. Under these circumstances I have no doubt that the evidence was admissible, because it had a tendency to prove, that the testator had been deceived by falsehoods. It is not like the usual case of examining into the general character of a person not a witness in the cause, which the law will not permit; but an inquiry into a matter of fact, rendered material, by the preceding evidence. If the women were really of good character, they had a right to represent themselves as such. But, if being of bad character, they made the testator believe that they were of good, it was a circumstance of fraud very proper to be laid before the jury. The principle established, Dietrick v. Dietrick, 5 Serg. & Rawle, 207, is decisive of the present question. That was a trial on an issue devisavit vel non, directed by the Register’s Court, and evidence having been given, that one of the principal devisees who was accused of having obtained the will by unfair practices, had represented to the testator, that the wife of one of his sons, was an extravagant woman who would dissipate any thing which might be given to her husband,#the opposers of the will were permitted to prove, that her general character and behaviour were good.
3. The third bill of exception was, to the admission of evidence “of the declarations of Margaret King, that the testator was incapable of transacting business.” Margaret King was a principal devisee in the will, which gave her the whole estate, (except a few legacies to a small amount,) for her life; after her death one half was to go to her relations, and one half to the relations of the testator. It is said, in support of this evidence, that Margaret King was the real plaintiff in this issue, the plaintiff on record, Nussear, being no more than her agent. If the whole estate had been devised to her, there would have been no question but her declarations would have been evidence, because the plaintiff on record, has, in truth, no interest in the cause, and his name is used as mere matter of form. If the issue had been framed between John Doe and Richard Roe, it would have answered the purpose full as well, security having been given for the costs, which was doné in this case. But Margaret King is not the only person interested in the establishment of the will, and hence arises the difficulty of the present question. The testator’s own relations one of whom is said to be an infant, are also interested. The Registers Court having ordered the trial of this issue, the verdict and judgment are conclusive as to the personal estate, and if given against the will, will be evidence not to be contradicted, against all persons claiming personal estate under it. The declarations of Margaret King, therefore, if received in evidence, would affect, not only herself, but others in no manner connected with her, or *329 implicated in her conspiracy. Granting that she is so much a party to' the suit, that her confessions might be evidence against herself, these confessions are not the confessions of the others, who have a separate interest. It is not like thé case of joint partners, where the confession of one may be used against both. We are now to establish a general principle to govern all cases of this kind. It happens, that Margaret King has a large interest under this will. But if her declarations are evidence, so also must be the declarations of a legatee, who takes but five dollars, or any other sum. The quantum of interest will make no difference. It was this consideration, which induced the court to • reject evidence of the declarations of one of the devisees, in the case of Bovard and Wife v. Walker and another, 4 Serg. & Rawle, 499. Now that I have mentioned that case, I will correct an error in the opinion of the court, in which it is said, that the same point was determined in Miller v. Miller, 3 Serg. & Rawle, 267. When the opinion in Bovard v. Wallace, was delivered at Chambersburg, the case of Miller v. Miller had not been published, and the manuscript was in the hands of the reporters. Hearing that the point had arisen in that case, I thought it had been decided, and thence arose the error. But, on mature reflection, I think the decision in Bovard v. Wallace was right. The same question was decided, in the same manner, by the Supreme Court of Massachusetts in Phelps and Co. v. Hartwell and Co., 1 Mass. Rep. 17, and that is the only decision, directly in point, which I have been.able to find out of Pennsylvania. It a case sui generis, where the rights of several persons, depending all on the same instrument, are tried together, and where, so far as concerns personal estate, the law admits of no other mode of trial. Under these circumstances it is unsafe, and unjust, to permit the rights of one to be affected by the declarations of another, and therefore I am of opinion that the evidence ought not to have been admitted. The judgment is to be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded. ,