HENRY DIETRICH *against* MICHAEL DIETRICH, and ANDREW YUNDT.

IN ERROR.

A deposition taken in the Register's Court, upon hearing of any cause litigated in that court, but not decided, is not evidence upon the trial of an issue between the same parties, directed by that court, without proof that the deponent is dead, out of the jurisdiction of the court, or unable to attend.

*Query.* Whether the decision of the trying court upon the preliminary proof of the inability of the witness to attend is the subject of error?

*Query.* Upon an issue *devisavit vel non,* are the declarations of a devisee, who is a party to the issue, evidence, where there are other devisees or legatees not parties?

WRIT of error to the Court of Common Pleas of the county of Lancaster.

This was an issue of *devisavit vel non* on an instrument of writing, purporting to be the last will and testament of *Philip Dietrich,* deceased.

That paper contained a devise of one tract of land to *Henry Dietrich,* and another to his sons *Adam* and *Samuel,* charged with legacies which were bequeathed to the testator's son *Michael,* and his two daughters, *Barbara,* wife of *Andrew Yundt,* and *Christiana,* wife of *Jacob Shaeffer.*

*Henry Dietrich* and *Christian Herr* were appointed executors, and the paper was witnessed by *Michael Rudicil, John Kurtz,* and *Philip Gloninger.* It was not received to probate, but on the *caveats* of *Michael Dietrich* and *Andrew Yundt,* this issue was directed on the 19th of October, 1816. The case had been tried several times before, and is reported in 5 *Serg. & Rawle,* 207.

On the present trial, the following bills of exception were taken on the part of the plaintiff, who, the verdict and judgment being against him, brought this writ of error.

First bill of exception.—After eleven of the jurors for the purpose of trying this cause had been called, and were in the box, an application was made by the plaintiff for its continuance; upon which application *Henry Dietrich,* the plaintiff being duly sworn according to law, among other things, testified that he had not subpenaed Mr. *Gloninger,* but that he went last week to Mr. *Gloninger's* house with a *subpena* in his pocket for Mr. *Gloninger,* (which he now produces, *prout* the same.) He told Mr. *Gloninger* he had a *subpena* in his pocket for him to attend on Monday last, and had come to *subpena* him. Mr. *Gloninger* replied that it was not worth while for him to do so, he could not attend, his deposition had been taken, and they must be satisfied with that. After plaintiff had given all his testimony on the motion to continue, the

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

defendants called *Adam Metzgar*, a witness who testified, that he had this morning signed his name as a witness to the will of *Philip Gloninger*, that Mr. *Gloninger* sent for him, and that he thought him very well, better than he had been. Whereupon, the court decided, that they would not continue the said cause. The cause being at issue, the jury were then sworn according to law, and the plaintiff to maintain the issue on his part, offered in evidence the deposition of *Philip Gloninger*, taken before the Register's Court of the county of Lancaster, in the cause in which this issue is directed, on the 19th October, 1816.

The plaintiff then called Dr. *John Miller*, as a witness; who, being duly sworn according to law, testified as follows: " *Philip Gloninger* might be able to come to court, but I don't believe he would be able to go through all the testimony in his present situation. He has got an asthmatical affection of his breast; on account of which he cannot rest at night, and has not rested any for several weeks. He has also had a slight bilious affection last week; that, together with his former complaint has weakened his mind considerably, from which he has become a little nervous, and would be unable to attend an examination. An examination might excite his vascular system, and it might bring on either slight apoplexy or a state of syncope, as I have seen him once or twice." Question, " Would, or would not an examination be dangerous to his life?" " In this way it might be considered so. I saw him last, between nine and ten o'clock this morning, I saw him before that yesterday in the forenoon. I consider him rather better to-day. I have had no conversation with him respecting wills—but he seemed very anxious, and told me he wished to be better, he had about half a dozen lines to write respecting his own family, and he would be satisfied. He told me he was seventy-four years of age." Question, " How long has he been in his present situation?" " The chief part of this summer, affected with the asthmatical affection." Question, " Would not the gentlemen have been enabled to take his deposition at any time during the present summer?" " I don't doubt but they might." Question, " Might it not have been taken a month ago?" "I have not paid such attention as to the time, to say how he was a month ago: I expect it might have been taken, with safety, six weeks ago. I know nothing of his making his will this morning, except what I heard in court, I have never known of a person having syncope from asthma in court—no, nor reading of one. His vascular system is very much excited at present; and there is a probability of its happening from the predisposition of the system. His pulse is always full and strong—I believe it is very rare that apoplexy has been occasioned by asthma. His strong pulse is occasioned by a spasmodic affection of the lungs. He commonly passes the day tolerably easy, but at night rests none, except sitting

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

up, and never rests an hour at a time. It is possible he might answer half a dozen questions here, and possibly not. No one can tell what effect it might have. The heated atmosphere here would be very exhausting to him—to stand such an examination and cross-examination for two hours would raise his pulse. He is a choleric man; and I would suppose it would have the effect of operating on his brain."

The plaintiff offered his deposition in the Register's Court, and the minutes of the Register's Court.

The defendants then called *John Getz* as a witness, who being duly sworn according to law, testified as follows: "It was between 9 and 10 o'clock this morning I saw *Philip Gloninger*, and I think his state of mind was as good as ever, only that he was very weak. In his writing room or office I saw him, he was sitting on the chair. I saw him looking over his will, and he altered some of the writing; rectified it. I and Mr. *Diffenbaugh* and Mr. *Adam Metzgar* were the witnesses to his will. He executed the will before us. He would be able at home, I suppose, to give testimony; since this morning I have not seen him—he would have been this morning."

Question, "What is the nature of his complaint?" "Dr. *Miller* can tell. I have seen him so that he could not rest five minutes on account of his breath; and he said he got giddy in his head, and he said he was so very weak. If he would be as he was a couple of days ago, he could not have been examined and cross-examined for two hours. This morning between nine and ten o'clock, may be he could have stood it a quarter of an hour or so, but how much longer I could not say." Question, "What would be the effect of bringing him here and examining him two hours?" "I can't say." Question, "Could he stand at all?" "I hardly think he could: I have seen him some days when he could not." Question, "Don't you think it would be a great danger to his health." "It might be a danger to his health." Question, "How long was he occupied in looking over his will?" "Not long—asked me to call Mr. *Diffenbaugh*—it might be between ten and fifteen minutes; he looked over it, and took his knife and scratched a little, and then said it was right. I don't take it that he is getting better: he says he is not: said he could not rest at night, nor had not for some nights. I have not seen him out of his house for near three weeks; he did not speak so much; he was sitting, and fell asleep, and did not hear some words I think—he has been in the habit of falling asleep for some years; that is when he set long—he has a spring machine to put behind him in bed, borrowed of Mrs. *Yeates;* I mended it."

*Porter* read the record of this suit, by which it appears, that on the former trials, Mr. *Gloninger* was the first witness examined by the plaintiff.

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

The counsel of the defendants then objected to the admission of the said deposition of *Philip Gloninger*, taken before the said Register's court, in evidence; and after argument, the court sustained their objection, and overruled the same: to which opinion of the court the counsel for the plaintiff did except, and pray the court to seal this their bill of exceptions, which is done accordingly.

Second bill of exceptions.—The counsel for the plaintiff, after the foregoing bill of exceptions was sealed, offered to prove as follows:

" The plaintiff to maintain the issue on his part, offered in evidence the *caveat* of *Michael Dietrich* and *Andrew Yundt*, against the probate of the instrument of writing now on trial; the proceedings of the Register's court thereupon, previous to the direction of the issue, [and to prove that *Philip Gloninger*, the person who drew the said instrument of writing, and who is a subscribing witness thereto, although regularly *subpenaed*, cannot attend on account of bodily and mental infirmity; that both his body and mind are so diseased and impaired, that he cannot now be examined as a witness, either at his own house or in court, nor could he have been for the last three weeks,] and we offer in evidence the deposition of *Philip Gloninger*, taken before the Register's Court on the 19th October, *prout* the same."

To this testimony, the counsel for the defendants made the following objection in writing: " The counsel for the defendants object to so much of the said offer as would permit the giving in evidence of the depositions, or - any of them, taken in the Register's Court."

The counsel for the plaintiff then read in evidence the *caveat* of *Michael Dietrich*, dated 16th September, 1816, and the *caveat* of *Andrew Yundt*, dated 17th September, 1816, and the record in the Register's court in the cause in which this issue is directed, dated 19th October, 1816.

The counsel for the defendant then stated that they did not object to so much of the said offer as is included in brackets; but that they did object to the remaining part of the offer, to wit: the part of it which follows the brackets.

The part within brackets not objected to, and therefore allowed by the court, but at the same time the court overruled the said deposition of *Philip Gloninger*, taken before the Register's Court, on the 19th October, 1816.   To which opinion of the court, overruling the said deposition, the counsel for the plaintiff did except, and pray the court to seal this bill of exceptions, which is done accordingly.

Third bill of exceptions.—The cause being at issue and the jury sworn, *prout* the record, the plaintiff, to maintain the issue on his part, gave in evidence, amongst other things, the instrument of writing purporting to be the last will and testament of *Philip Die-*

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

*trich,* deceased, the validity of which is on trial in the present cause, bearing date the thirteenth day of April, one thousand eight hundred and sixteen.

After the plaintiffs had rested, the defendants, among other things having read the deposition of *Elizabeth Lechler,* to maintain the issue on their part, offered in evidence the deposition of *Lydia Curran,* taken before *Samuel Carpenter,* Esquire, the 13th day of March, 1820, and filed of record in this cause.

The plaintiff objected to that part of said deposition, a copy of which follows:

" I also lived at *Henry Dietrich's* a little better than two months : when he would come home, his wife would ask him ' how is the old man?'—he would say, ' he is childish and childisher every day."

The court overruled the said objection of the plaintiff's counsel, and admitted the said part of the deposition to be read ; to which opinion of the court the counsel for the plaintiff did except, and pray the court to seal this their bill of exceptions, which is done accordingly.

Fourth bill of exceptions. The cause being at issue, and the jury sworn, *prout* the record, the plaintiff after having given in evidence, among other things, the instrument of writing purporting to be the last will and testament of *Philip Dietrich,* deceased, dated 30th April, 1816, rested. The defendants to maintain the issue on their part, offered in evidence the deposition of *James Lowe.* The plaintiff objected to that part of the said deposition which follows, to wit : This deponent further heard *Henry Dietrich,* the plaintiff in this suit, say to this deponent that the said *Philip Dietrich* was childish and doted; this was about two years ago, as near as this deponent can recollect, he knows that it was about that time, as it was just before the election in the fall of the year 1815, that this deponent moved away from where he lived near the said *Philip Dietrich's,* and what he has above deposed to, happened during the said year.

The court overruled the said objection of the plaintiff, and permitted that part of the said deposition to be read, to which opinion of the court the counsel for the plaintiff did except, and pray the court to seal this bill of exceptions, which is done accordingly.

Fifth bill of exceptions. The cause being at issue, and the jury sworn, *prout* the record, the plaintiff having examined *John Kortz,* one of the subscribing witnesses to the alleged last will and testament of *Philip Dietrich,* deceased, and given in evidence the deposition of *Michael Rudisill,* gave the said will in evidence and rested. The defendants then gave their testimony in chief to the jury ; and, among other things, examined several witnesses, who testified to the general good character of *Elizabeth Dietrich,* the wife of *Michael Dietrich,* one of the defendants. The plaintiff then proceeded to give his repelling testimony in evidence, and among other things proved by *John Landis,* that *Elizabeth Russell,* a witness who had

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

been examined in behalf of the defendants, in the year 1817, or 1818, at his house said, that *Michael Dietrich,* jr. the son of one of the defendants, was at her; they wanted her to give such evidence as they wanted; that they promised her some furniture if she would do so, but she said she was not going to do it. She said the old man had his senses to the last hour; she said she would not take a false oath for *Michael Dietrich,* or any body else. The plaintiff also proved by *Elizabeth Dietrich,* that the said *Elizabeth Russell,* had told her that the said *Michael Deitrich,* jr. (who had also been examined as a witness in behalf of the defendants,) had been at their house, and had wanted her to swear on their side, and had promised her a table and a half a dozen chairs, and half a dozen cups and saucers and plates, to do so. The plaintiff then afterwards examined *Margaret Flick* as a witness, who testified as follows: Mrs. *Dietrich,* (the wife of *Michael Dietrich* the defendant) told me to tell *Betsey Russell* to come in; she had a house-tire for her. It was some time after the old man's death. *Betsey Russell* came in one Sunday afternoon. Mrs. *Dietrich* sent word down by *Rebecca Dietrich,* her daughter, for me and *Betsey Russell* to come up. I told her I did not like to go up, and she went home. She came back directly again, and told us we must come up. I told her then again, I did not like to go up.. She told me then, we should come up—we could go in the back way—that she had a key to the garden gate. Then *Rebecca* did not go till we went along. Mrs. *Dietrich* asked me what was the reason why we did not come? I don't recollect what I said. She told *Betsey Russell* then, she had some cups and saucers for her; half a dozen of china, and half a dozen of plates, two butter plates and a cream jug. She told me then we should take them along: I told her then I did not like to take them along because it was Sunday. Then I told her I would go out to *Adam's* on Monday morning—I was working there then, and would take them along to *Betsey Russell.* On Monday morning I went up to *Michael Dietrich's* with a basket, to take the cups and saucers and plates to *Betsey Russell.* Mrs. *Dietrich* put them in the basket for me, and told me to tell *Betsey Russell,* that if *Adam Dietrich's* family did not use her well, she should come in and live with them, that she would give her house room, and charge her no house rent. When I came out to the house, I told *Betsey Russell* this: She told me then, that she knew very well what they wanted. She told me then, she would not go there at all; they were going to take her in to go on their side."

The plaintiff then, further, to maintain the issue on his part, offered to prove by the said *Margaret Flick,* that the said *Elizabeth Dietrich,* (the wife of *Michael Dietrich,*) attempted to bribe her, the said witness to swear that old *Philip Dietrich* was out of his senses. The counsel for the defendant objected to the admission of the said testimony; and the court, after argument, sustained their objection

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

and overruled the same : to which opinion of the court, the coun-
sel for the plaintiff did then and there except, and pray the court
to seal this bill of exceptions—which is done accordingly.

The plaintiffs in error assigned the following errors :

1. There is error in the first and second bills of exception ; in-
asmuch as the court ought to have permitted the deposition of
*Philip Gloninger,* taken before the Register's Court, to be read in
evidence to the jury.

2. There is error in the third bill of exceptions, inasmuch as
the court permitted that part of the deposition of *Lydia Curran,*
which was objected to by the counsel of the plaintiff, to be read in
evidence.

3. The court erred in permitting that part of the deposition of
*James Lowe,* to be read in evidence, which was objected to by the
counsel for the plaintiff, and which is the subject of the fourth bill
of exceptions.

4. The court erred in refusing to permit *Margaret Flick,* under
the circumstances stated in the fifth bill of exceptions, to testify,
that *Elizabeth Dietrich,* the wife of *Michael Dietrich,* attempted to
bribe her to swear that old *Philip Dietrich* was out of his senses : and
therefore, there is error in the fifth bill of exceptions.

*Buchanan* for the plaintiff in error.

First error. The depositions of the subscribing witnesses to the
will were reduced to writing by the Register's Court, under the act
of assembly of the 13th April, 1791. *Purd. Dig.* 703, the 18th sec-
tion of which requires that the depositions of the several witnesses
examined before that court, shall be taken in writing, and made
part of the proceedings in the cause, and makes these depositions
evidence upon an appeal.

They are part of the record, and taken with more care then
could be had under any other circumstances ; and in the present
case they were taken upon a full cross examination. *Philip Glo-
ninger,* the witness, whose deposition the plaintiffs offered, was a
man of 74 years of age, *in extremis,* and his inability to attend, es-
tablished by the testimony of his attending physician ; and yet the
court rejected his deposition. It could not be on the ground that
there had been a failure to prove the inability of the witness to at-
tend, that the deposition was overruled. To that point the proof
was full. Nor can it be the law, that the judge who tries the cause,
has upon this preliminary question the right to decide conclusively,
and without review. The syllabus which states this principle is
not supported by the case. *Voris* v. *Smith,* 13 *Serg. & Rawle,* 334.
It must be a clear case, we admit, which would justify this court to
reverse on this ground. He referred also to *Vincent* v. *Huff,* 8
*Serg. & Rawle,* 381, 387.

But it is apparent on the second bill of exceptions, that the de-
position was not rejected for any defect of proof on this point

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

Upon that bill we offered to prove the absolute inability of the witness to attend.

When an issue is directed by a court of chancery to a court of law, to which this is analogous, it was never heard that a deposition which had been taken in the cause in chancery, and passed publication, could not be read. This deposition is taken in the most solemn form, and by the act of assembly is made part of the record. *Logan* v. *Watt*, 5 *Serg. & Rawle*, 212. *Dornick* v. *Reichenbach*, 10 *Serg. & Rawle*, 84. He referred also to the case of *Sholly* v. *Diller*, decided at Chambersburg, and not yet reported.

Second and third error. The question presented on these bills is whether the declarations of *Henry Dietrich, one* of the devisees, who was a party to the issue, can be received in evidence to effect the interest of the other devisees. He contended they could not. It was so decided by the Supreme Court of the state of Massachusetts, in the case of *Phelps* v *Hartwell*, 1 *Mass. Rep.* 71; and the same principle is recognized in the case of *Bovard* v. *Wallace*, 4 *Serg. & Rawle*, 499, and the very point is decided in *Nussear* v. *Arnold*, 13 *Serg. & Rawle*, 323. *Nussear* was a nominal party, being the agent of the party in interest, and the declarations offered were those of the real party whose agent he was. The court placed the decision of that case on the true ground, that the declarations of one devisee shall not be received to destroy the interest of others. *Fenn* v. *Read*, 1 *Yeates*, 87. The furthest courts have gone upon this subject, is to admit the declarations of a trustee, party on record, to effect the *cestui que trust.* 2 *Starkie's Ev.* 39, 40, 41. But the declarations of an executor before he became such are not evidence. 4 *Con. Rep.* 544. These declarations of *Henry Dietrich,* were made in the life time of the testator.

Fourth error. The wife of the defendant was active in corrupting the witness of the plaintiff, she united with him in a conspiracy to effect this object, and proof should been received of her attempt to bribe the witness.

*Porter* for defendant in error. There is no question but that evidence may be given of what a witness swore on a former trial between the same parties, if he be dead, or reside out of the state. *Magil* v. *Caufman,* 4 *Serg. & Rawle*, 319. *Lightner* v. *Wike, Id.* 203. *Carpenter* v. *Groff,* 5 *Serg. & Rawle*, 162. *Chess* v. *Chess,* 17 *Serg. & Rawle*, 409. Admit, for the sake of argument, that a deposition taken before the Register's Court is upon the same footing, still the plaintiff did not bring himself within the rule. *Ottinger* v. *Ottinger*, 17 *Serg. & Rawle*, 142.

This rule has not been extended to a witness residing within the jurisdiction of the court, however infirm he may be, *Richardson* v. *Stewart*, 2 *Serg. & Rawle*, 84. So no person can be admitted to prove a deed, until it appear that the subscribing witnesses are dead, or not to be had. *Peters* v. *Condron*, 2 *Serg. & Rawle*, 80.

(Henry Deitrich *v.* Michael Dietrich and Andrew Yundt.)

Here the issue had been pending for eight years, during which the party might have taken the deposition of the witness, and he should have taken it.

The court below decided, that the evidence of the inability of the witness to attend was insufficient, and this was the ground on which the deposition was rejected.   Their preliminary inquiry, he contended, was exclusively for the trying court, and was not the subject of error.  *Vincent* v. *Huff,* 8 *Serg. & Rawle,* 311-7.   *Voris* v. *Smith,* 13 *Serg. & Rawle,* 334.   *Harwood* v. *Ramsey,* 15 *Serg. & Rawle,* 32.   *Dodge* v. *Peifer,* 16 *Serg. & Rawle,* 214.

The court below have the witnesses who prove the preliminary matters before them, and can best judge of the degree of credit to be attached to their testimony.   So where a trying court have had some evidence of a paper having been lost, the admission of secondary evidence of its contents will not be error, nor will a court of error inquire into the preliminary evidence.  *Leazure* v. *Hillegas,* 7 *Serg. Rawle,* 323.

Second and third Error.   *Henry Dietrich* was the party in the cause, and this circumstance distinguishes this case from all the cases relied on on the other side.   In *Lightner* v. *Wike,* 4 *Serg. & Rawle,* 203, and *Bovard* v. *Wallace,* 4 *Serg. & Rawle,* 499, the declarations were decided not to be evidence, because not made by the *party* to the suit.

The same remark applies to the case of *Nussear* v. *Arnold,* 13 *Serg. & Rawle,* 323.   It was expressly put upon this ground by the counsel who argued the case, and any general remark made by Chief Justice *Tilghman,* in delivering the opinion of the court, applicable to the case of the declarations of a *party* to the suit, who is devisee under the will, is a mere *obiter dictum.*   So an admission contained in the recital of a deed by one of the lessors of the plaintiff, is evidence against all, as he could not be called as a witness, and there is a community of interest among them.  *Brandt* v. *Klein,* 17 *Johns. Rep.* 335.   So a declaration or confession of one of the lessors of the plaintiff in ejectment is evidence against all of them.  *Jackson* v. *M'Vey,* 18 *Johns. Rep.* 330.

If the declarations of the party on record are not evidence, then no evidence can in any shape be obtained as to his knowledge, for he cannot be called as a witness.   But the confessions and admissions of a party on the record are always evidence, and that too although he be but a trustee. 2 *Starkie Ev.* 39, or whether they are made by a real or a nominal party, who sues for the benefit of another. 1 *Phil. Ev.* [74.]   *Banerman* v. *Radenus,* 7 *T. R.* 663.  *Johnson* v. *Kerr,* 1 *Serg. & Rawle,* 25.   *Marshal* v. *Sheridan,* 10 *Serg. & Rawle,* 268.   So in a civil suit against several, who have a joint interest in the decision, a declaration by one, concerning a material fact within his knowledge, is evidence against him, and

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

all who are parties with him to the suit. 1 *Phil. Ev.* [75.] *Johnsson* v. *Beardslee,* 15 *Johns. Rep.* 3.

Declarations of a joint debtor, although not a party to the suit, may be given in evidence. 3 *Day's Rep.* 309. But here we not only alleged incapacity of the testator, but a conspiracy, practices and fraudulent misrepresentations, on the part of the principal devisees, and the evidence to support these allegations had been given before the offer of the declarations of the plaintiff. On this ground these declarations were clearly evidence.

Fourth error. The evidence offered in this bill was rather inference from facts, than the evidence of facts. *Miller* v. *Miller,* 3 *Serg. & Rawle,* 267. The declarations of the wife are never evidence against her husband even where she is the meritorious cause of action. 1 *Phil. Ev.* 64. *Wharton,* 308, *Pl.* 439. *Randal's Peake,* 17. 2 *Stark. Ev.* 707, *note* 2. *Cro. Eliz.* 245. 1 *Esp. N. P.* 413.

*Jenkins,* on the same side. The cases referred to of *Ferron* v. *Read, Logan* v. *Watt. Dorrick* v. *Reichenback* and *Sholly* v. *Diller,* are all cases where the writing was either proved before the Register, Register's Court, or upon an issue directed for that purpose. In any such case, the probate is unquestionably *prima facie* evidence to go to the jury, but here the proceeding was arrested in *limine;* and a decree of probate never was made; and the depositions by the act of assembly only become evidence in the event of a decree. By that act either party may ask an issue; and if that be directed, it must be conducted according to the principles of the common law. And they might as well have offered the paper, alleged to be a will, in evidence, as to offer this deposition, without the preliminary proof. This issue is not according to the act of assembly which makes the depositions evidence on appeal, but is under the proviso or exception to the act, which authorises an issue, and sends the cause to a different *forum.*

It is important to adhere to the general common law rule, which requires the personal presence and examination of the witness before the court, *Gilbert Ev.* 54, and the party who wishes to avail himself of an exception to that rule, should be required to bring himself clearly within the exception. If the court will review the evidence on the preliminary question as to the ability of the witness to attend, it must be in a rank case. This is a wholesome principle and leads to justice; and this is not such a case. By reference to the evidence, the court will see, that the plaintiff did not make out the inability of the witness to attend.

Where counsel take the opinion of the court on a question of blendid law and fact, error in that opinion is not assignable here. *Rouvert* v. *Patton,* 12 *Serg. & Rawle,* 253. Upon this principle, if

41

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

the court below did err on this point, this court will not reverse on that account.

Depositions are the creatures of the civil law, and the proceeding upon appeal, under this act of assembly, is in the nature of a civil law proceeding. At common law they are but substitutes for what is considered better evidence, and not to be introduced but upon evidence clearly establishing the exception which warrants their admission.

We proved that the decedent was an infirm, imbecile old man, and that he had been practised upon by the plaintiff, his son, for his own aggrandizement, and to the ruin of his brothers and sisters. He is not only a party on the record, and a principal devisee, but a devisee deeply implicated in a fraud in obtaining the will. If the principle be established, excluding the declarations and acts of a devisee under these circumstances, the grossest fraud may be protected from examination; legacies may be inserted in the will, and the devisee, who contrived and executed the fraud, become a party to the issue; and all his acts and declarations which go to demonstrate that fraud, are shut out, and no evidence can be given of them.

The rule admitting the declarations of the party does not apply to the case of a mere trustee; but where the party has an interest, his declarations are always evidence. This principle pervades all the cases, and the excepted cases are of parties having no shadow of interest, as guardians, executors, or mere trustees.

*Hopkins,* in reply. The questions presented are of peculiar importance. Wills are commonly made by old men, and their associates, who are usually old men, are the witnesses, and if their testimony, is not perpetuated, disastrous consequences result. The act of assembly has therefore wisely provided to perpetuate that testimony. There are two modes of proving a will in common *form,* and in solemn form. In common form, it is proved by the oaths of the subscribing witnesses, which is the most ordinary mode in Pennsylvania. This proof is *ex parte* and informal, yet to perpetuate acts so important, the depositions taken in this way, are permitted to be read. This is the principle in the cases already referred to in 1 *Yeates,* 87. 5 *Serg. & Rawle,* 212. 10 *Serg. & Rawle,* 94, and in 4 *Yeates,* 13, and the case of *Sholly* v. *Diller.* The officer usually has no practice in taking depositions, and commonly generalizes, and throws into the lump the testimony of the witnesses; and yet these depositions, thus informally taken, contrary to all common law rules in reference to testimony, are made evidence. But the Register's Court is held by men fully competent to the investigation, and proceeds not *ex parte,* but in the presence of the parties litigant. Under the act of assembly, all the proceedings of this court, and before the Register, up to the time of granting the issue, including the depositions taken, are a matter of record, and

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

may be read, although the witnesses are actually present in court. This court is solemnly constituted, and this proof is formally taken, and in solemn form, and much higher testimony than the *ex parte* probate which has been decided to be competent evidence. No evidence therefore was necessary to introduce the depositions. By the act of assembly they are made part of the proceedings, and in one event they are the only evidence upon which the highest court, in the last resort, are to decide. The legislature meant that the testimony should be taken, and fixed; and. whether in common form, or in solemn form, it is evidence. Many a will has fallen to destruction for want of this care to preserve the testimony. These depositions are not only taken in solemn form, but when the recollection of the witnesses is fresh, and alive to the transaction, which has then but recently occurred. In the lapse of time, the mind of the witness is agitated by the events of life, and his memory of the incidents connected with the execution of the will almost effaced. If the party were required again to take his deposition, before a justice, an old man would be liable to have his recollection played with, by the ingenuity of counsel, and his testimony perverted. Depositions usually partake of the infirmity of the *forum* before which they are taken. But before the Register's Court, the witness is protected by a court accustomed to manage and control the taking of testimony.

Knowing the importance of the deposition of *Gloninger,* (who wrote the will,) we gave the preliminary evidence of his inability to attend. It is true it was agreed that our offer on this point in the second bill should be received, but at the same time the court overruled the deposition; showing, that the court considered that no testimony could be given which would warrant the introduction of the deposition. But it is denied that a discretion exists in the court below to reject evidence, which is not controlled here.

The court below is called to make a hasty decision, and it would be monstrous to say, that there is no review of such decision rejecting evidence on the preliminary inquiry.

In the case of *Pipher* v. *Lodge,* 16 *Serg. & Rawle,* 220-21, the chief justice expressly affirms the position that such decision is the subject of review. Every question is for the discretion of the court, but it does not follow that the exercise of that discretion is conclusive. *Harwood* v. *Ramsey,* 15 *Serg. & Rawle,* 32.

This is not the case of a contract in which all the parties bind themselves, so that the act of one is the act of all, but it is a case in which, although the legatees and devisees have a community of interest in establishing the will, they, as respects each other, are strangers.

The case in 1 *Mass. Rep.* 71, is directly to this point, and has not been impaired. So is *Bovard* v. *Wallace,* and *Nussear* v. *Arnold.* In the last case the ground taken here was considered. It was al-

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

leged that *Margaret King*, whose declarations were offered, was not only the principal devisee, whose agent the nominal party on the record was, but deeply implicated in a conspiracy, and fraud in obtaining the will.

If there are two trustees, and both sue, the declarations of one are not evidence. There is no privity of contract between them; where this privity exists, as in the case of a joint contract, it is otherwise. This distinction explains the cases referred to in 17 *Johns. Rep.* 335, and 18 *Johns. Rep.* 330; the parties were united in interest, and the declarations of one were received to effect the others.

GIBSON, C. J. delivered the opinion of SMITH, J. and himself, while HUSTON, J. delivered the opinion of Ross, J. and himself.

GIBSON, C. J.—I have so often been accused of an attachment to common law principles and forms in preference to local practice, that it gives me pleasure to testify, in this instance, a paramount respect for our own precedents. This court had flattered itself that the law was settled by *Bovard* v. *Wallace,* and *Nussear* v. *Arnold,* (which is this very case,) if not in conformity to common law analogies, at least consistently with justice and reason; and even were my opinion of the fitness of those decisions changed, I would, to avoid the mischiefs which are inevitably produced by overturning the solemn decisions of the court of the last resort, for theoretic reasons, adhere to the known landmarks of the law by which courts and counsel may proceed with safety and certainty. I am happy to say my brother SMITH concurs with me in opinion, that the admissions of *Henry Dietrich,* a principal devisee, and party to the feigned issue, were erroneously received; and, the court being equally divided on this point, the authority of the cases to which I have referred, is, as yet, untouched. On the remaining point, I would, for the sake of unanimity, be inclined to yield the opinion I expressed in *Pipher* v. *Lodge,* 16 *Serg. & Rawle,* 214, as the authorities are nearly balanced on the question, whether the sufficiency of evidence to lay a ground for the introduction of a deposition, can be re-examined on a writ of error; but as Judge SMITH holds out on this point also, I am inclined to say the judgment ought to be reversed on both points.

HUSTON, J.—The two first bills of exception were in this court argued together, but an attempt was made to draw a distinction between them, by reading the part within brackets, without the words " *to prove,*" and considering the rest of the sentence as a statement of facts admitted, and by using the words, " but at the same time the court overruled the said deposition," as conveying the idea that although the court allowed them in words to prove the allegation in brackets, yet in fact, they decided without hearing such facts proved; beyond a doubt the deposition was offered the second time for the purpose of accompanying it with the record of the issue in which it was taken:—because to enable

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

one to read a deposition, taken in a former cause, or in another court, between the same parties, you must show that there was such a cause in such court: so the court understood it. There was no offer to give further evidence of inability to attend. If offered and refused we should have heard of it. To consider a bill of exceptions, on account of some inaccuracy of expression, as presenting a case so different from the real facts, as that counsel will not even assert events to have happened as they now allege them, would be to pervert a bill of exceptions to the worst purpose. Was this deposition evidence, if the witness was standing in court, and if not, was the proof of inability to attend such as that it was error in the court below to reject it?

In the first view, the principal part of the argument was founded on reading the first sentence of the act of assembly as far as the words " made part of the proceedings in the case:" and to be sure, if no other words had followed, the argument was strong. The act contemplates two classes of cases, one where on *caveat,* the whole matter is heard and decided by the Register's Court, without the intervention of a jury, and here all the testimony must be reduced to writing, and forms part of the proceedings, and if an appeal be taken, goes up as part of the cause.

The other class is where the weight and effect of the evidence is not submitted to the Register's Court, but to a jury; and as there the mode of proceeding is by examination of witnesses, in presence of the jury, and their finding is conclusive on the facts submitted, the testimony given before them, does not go up on appeal, nor is it known to the superior court. Suppose the testimony of the witnesses to the will is reduced to writing in the Register's Court, and from this testimony it would appear to be a valid will, yet an issue is directed, and on the whole evidence the jury find it is not the will of the testator; those depositions are not within the words of the act of assembly, and if sent up on an appeal, must be considered as no part of the record, or an immaterial part.

In ordinary cases the witnesses go before the Register, and make oath, that they saw the testator execute and deliver the paper as his last will and testament, and that he was of sound mind. These affidavits are endorsed on the will, and letters testamentary are granted to the executors. In giving copies of the will, it was usual, and at one time was thought necessary, to give copies of these affidavits. It was, however, long ago decided that a copy of the will, and a copy of the record, that it was on such day proved and approved, was sufficient. This certificate of the proof, and that it was approved, is the real and true probate, and what makes it evidence in any, and every court. If the affidavits of the witnesses are added, along with this certificate, they are often called the probate, and read along with it, though the witnesses are standing in the court, where the will is offered in evidence; and in

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

all the cases where such affidavits have been read, it will be found that the Register or Register's Court have acted on them, and adjudged the will to be proved.   Where these depositions have not been acted on, and no adjudication on the validity of the will, they may be used as any other deposition taken before a court having jurisdiction of the same matter afterwards trying in another court: that is, may be used, if the deponent is dead, out of the jurisdiction of the court, or unable to attend.   It appears Mr. *Gloninger* had been twice examined in open court, on trials of this cause, before the same judges who rejected this deposition.   In most cases in this state, and in all of much importance, the counsel on each side, and the court, write what the witness says, and all that he says, (for he stops at the end of each sentence until it is written,) we cannot suppose these, depositions I may call them, were lost.   They were not offered to be given in evidence.   The president, and perhaps both the judges, knew Mr. *Gloninger*, and the witnesses who swore to his state of health.   They had also witnessed his former examinations, and cross examinations in court, and they could, although we cannot judge of the importance of his being examined in the presence of the jury.   I cannot allow that a particular temperament of body in the witness, unless very peculiar indeed, can change the law.   If a witness intends to tell, and does tell the truth fairly, there is no reason why he should become much excited, or why his choler should rise so as to endanger apoplexy; and if he will become excited in a particular cause, and will answer so as to make a tedious cross examination necessary, it is right the jury should see and hear him.   There are two cases, and I recollect but two, where this court have reversed, because the court below erred in receiving or admitting a deposition, on account of a defect of proof of inability to attend; one was a very early case; and there are seven or eight, where it has been said to be a matter pretty much depending on the discretion of the court, who try the cause. The question whether such proof has been given of inability to procure a written paper, in order to let in parol evidence of its contents, is like this in principle; I recollect two cases, *Magil* v. *Caufman, and another,* both reported, in which this court refused to reverse, or even seriously consider the matter, saying it was within the jurisdiction, and depended on the discretion of the court below.   This court does not now say, that there can be no case in which we will reverse on such account, but we say it must be a very strong and gross case, in which we will interfere, and we think this not such a case.

The next two bills of exceptions were argued together, and they present the question, whether, in such an issue, the declarations or admissions of the principal devisee in the alleged will, and who is sole plaintiff in the cause, can be given in evidence?   Perhaps the decisions of this court, on this point, have been peculiar to this state,

(Henry Dietrich *v.* Michael Dietrich and Andrew Yundt.)

except one early case in Massachusetts. They seem, however, care-fully, either to keep clear of this case or admit it. *Bovard* v. *Wallace,* 4 *Serg. & Rawle,* 499. In questions on the validity of a will, the declarations of an executor or devisee, who is not a party to the suit, are not evidence.

The case of *Nussear* v. *Arnold,* 13 *Serg. & Rawle,* 323, is still stronger. The question there was, whether the declarations of a devisee, who was carrying on the cause, and whose agent was the plaintiff, in the feigned issue, should be given in evidence. And in the argument and decision it seems to be taken for granted, that if the devisee had been a party, there would have been no dispute. The objection that these admissions may effect the rights of other devisees, has not been of so much avail in other courts. In 17 *Johns.* 335, and 18 *Johns.* 330, the recital in a deed, and the parol declarations of one of several lessors in ejectment, were admitted, although they might effect the other lessors.

The admission of sanity or insanity by a devisee is one thing, the repeated admission that a man of ninety years of age was childish, and becoming more so every day, is another and stronger matter, when the fact trying is whether the very person who made this declaration or admission, did not at that very time, or soon after, procure the will to be made by misrepresentation and imposition on this weakness. The cases cited prove the general position, that the declarations of a party on record, and who has an interest in the cause trying, are in all cases evidence. We think therefore, that as well the cases in this court, (which always except the case where devisee is not a party to the suit,) as the uniform current of authorities, require that we affirm the decision of the Common Pleas on these two bills.

The last bill of exceptions was not insisted on. The declarations of a married woman in the presence of her husband, or when acting as his agent, are evidence against him, but generally they are not.

ROGERS, J., had been of counsel in the cause, and took no part.

Judgment affirmed.