## Hauberger *against* Root.

Declarations or admissions of one of several devisees or legatees named in a supposed will, tending to prove that the alleged testator was not of sufficiently sound mind at the time to make it, or being very weak in mind was improperly influenced to make it contrary to what he would otherwise have done, are not admissible on the trial of a feigned issue directed by the Register's Court to try its validity.

Whether made before or after the will, or by one who was a party to the feigned issue, where they may affect others not in privity with him, is not material.

Nor is evidence admissible on such issue to prove that the testator some fourteen years before furnished a son with money to buy a farm, so that he would receive more than his share.

An account or book in writing signed by the testator and referred to in the will, is evidence on the issue of *devisavit vel non*, though it was copied from a paper which was destroyed.

Evidence is admissible to show that the holder of a bond of the testator's produced it at the appraisement of the testator's effects, and had it inserted in the inventory, and said it had been given to him for collection, to rebut an imputation on his honesty in relation to the bond, which a witness on the other side had testified as proceeding from the testator.

ERROR to tne Common Pleas of *Chester* county.

This was a feigned issue, in which David M. Root and Jacob M. Root were plaintiffs, and John Hauberger, Samuel Hauberger,

[Hauberger v. Root.]

Jacob S. Root and Christopher Hitner defendants, directed by the Register's Court of Chester county to try the validity of a certain paper writing purporting to be the last will and testament of Jacob Root, deceased, and bearing date the 1st May 1841. The precept issued by the Register's Court was in the form prescribed by the Act of 15th March 1832, and after setting out the preliminary facts, proceeded thus:

"And whereas Mr Lewis, of counsel as aforesaid, prayed that a feigned issue might be directed into our said Court of Common Pleas, wherein the said David M. Root and Jacob M. Root should be named as plaintiffs, and John Hauberger, Samuel Hauberger, Jacob S. Root and Christopher Hitner be named defendants, to try the validity of said instrument of writing and the matters of fact objected thereto, to wit; that the decedent by reason of the imbecility and feebleness of his intellect at the time of the making of the said writing, was incapable of making a valid testament or doing any other legal act. That the said writing was procured by the fraudulent influence of some of the principal devisees and legatees named in the same, exerted upon the enfeebled intellect of the said decedent; and also any other matters of fact that may be objected thereto. Therefore we command you," &c.

The issue framed was in the common form of issues of *devisavit vel non.*

On the trial a great number of witnesses were examined at much length, but as the case came before this court merely on bills of exception to evidence, it is unnecessary to state the circumstances. The defendants examined one Wells to prove a conversation with the testator in respect to a bond on which he went to pay the interest, on which occasion the testator sent him for Jacob M. Root, who, on being called by witness, suggested that it would be necessary to bring pen and ink along, as there were none in the house. Witness remarked to him, on the way to the house, it was highly necessary for him or his father, or some one, to attend to the old man's business, for he was not fit to attend to his own.

1. The defendants then proposed the following question to the witness: " Did Jacob M. Root say anything in answer, and, if so, what ?" The plaintiffs objected to any answer by the witness to this question: the court sustained the objection and sealed an exception.

2. On their examination of Adam Spang, the defendants requested the witness to state whether Jacob Root furnished his son John with money to buy a farm fourteen or fifteen years previous. The plaintiffs objected to this question ; the court overruled it and the defendants excepted.

3. The defendants proposed to another witness the following question: " What did you hear John Root say a day or two after the death of the old man, about the existence of a will of Jacob

Root?" The plaintiffs objected to this question; the court sustained their objection and sealed an exception.

4. The defendants asked a witness this question: "After the 1st May 1840, did you hear John Root say anything about the state of the old man's mind, and, if so, what?" The plaintiffs objected; the question was overruled and a bill sealed.

5. The plaintiffs offered in evidence a book of entries which a witness testified he had copied, at the instance of the testator, from an old pamphlet in the testator's handwriting. The entries, which were signed by the testator, were of monies paid to three sons-in-law. The defendants objected to its admission, but the court admitted it and sealed an exception.

6. The plaintiffs asked a witness, who had stated that David M. Root had in his possession a note belonging to the testator, how David said, at the time he produced the note, he came to have possession of it. The defendants objected, but the court overruled the objection and sealed a bill.

The testator, by his will, after the usual introductory clause and ordering his personal estate to be sold for the payment of his debts, devised as follows:

3. It is my will, and I do order that my real estate, containing *300 acres, more* or *less,* situated in Coventry township, Chester county, be divided into two shares, and disposed of in the following manner, viz., that part of my real estate lying south, &c., with the appurtenances, &c., I give and bequeath unto the children of my deceased son, Jacob Root, their heirs and assigns for ever, to be divided in equal shares between them, in such a way as they or their representatives can agree among themselves, which said lands shall be in full for their share of my estate. That part of my real estate lying north, &c., and the part south, &c., not included in the bequest above-mentioned, I give and bequeath unto my son John Root, his heirs and assigns for ever, as his full legacy, subject, nevertheless, to the payment by son John Root of $200 (without interest) to each of the children of my deceased daughter Susan, upon their becoming of age, which said sums, when paid, to be in full of their share of my estate.

4. It is my will, and I do order that all my bonds, notes, book-accounts and proceeds of my personal goods, be collected as soon as circumstances will admit of, and be divided in three equal shares: one equal third part to be paid to the children, or their representatives, of my son John Root; two equal third parts to be paid to such person or persons as my executors shall appoint in trust, and to be by him or them put upon interest, and the interest of which to be paid half yearly to my daughter Catharine, intermarried with John Albright, and my daughter Elizabeth, intermarried with John Hauberger, for their sole and separate use during their natural lives, exclusive of the said husbands, and for which their, the said Catharine and Elizabeth's, receipt alone for

their respective parts, shall be a sufficient discharge; and from and after the decease of the said Catharine or Elizabeth, their respective share shall be equally divided among their respective children, share and share alike.

It is further my will, that the sum of $900, paid by me to each of my sons-in-law, John Albright, John Hauberger and Daniel Hauberger, and charged to them in my books, shall be their legacy in full out of my estate.

Lastly—I nominate, constitute and appoint my grandsons, Da vid M. Root and Jacob M. Root, to be my executors, &c.

The errors assigned were in overruling the questions in the first four bills, and in admitting the evidence in the two last bills of exception.

This case was argued at March Term 1843, by *Mulvany* and *Lewis,* for the plaintiffs in error, and *Hemphill* and *Dillingham,* contra; and was now re-argued by *Lewis* and *Meredith,* for the plaintiffs in error, and *Hemphill* and *Dillingham,* contra.

The opinion of the Court was delivered by

KENNEDY, J.—The first, third and fourth errors raise the question whether the declarations or admissions of one of several devisees or legatees named in a supposed will, tending to prove that the alleged testator was not of sufficiently sound mind at the time to make it, or being very weak in mind was improperly influenced to make it contrary to what he would otherwise have done, be admissible or not on the trial of a feigned issue directed by the Register's Court to determine its validity. They will therefore be considered together as one error.

The declarations mentioned in the first bill of exceptions, and offered to be given in evidence by the defendants in the court below, were alleged to have been made by Jacob M. Root, one of the devisees in the will, and also one of the plaintiffs to the issue then trying, a few days before the making of the will. But whether made before or after is not deemed material. Neither is it considered of any importance that they were made by one of the devisees named in the will, who appeared to be one of the plaintiffs on the record. Having come to the conclusion that the declarations of such devisee were not admissible for the purpose for which they were offered on the trial of the issue *devisavit vel non,* because the verdict and judgment founded on the credit and effect of them, if received in evidence, would go to affect the rights of the other devisees or legatees named in the will, whose interests under-it are altogether distinct and separate from those of the party making such declarations, renders it unnecessary to notice particularly the declarations or admissions referred to in the third and fourth errors assigned, as it is self-evident, if those

[Hauberger v. Root.]

embraced by the first error be shown to be inadmissible, that those of the third and fourth must be so also.

Though it be true that the admissions of a party to the record are generally receivable in evidence against him, yet where there are several parties on the same side, the admissions of one are not permitted to affect the others, who may happen to be joined with him, unless there is some *joint* interest or *privity* in design between them. *Dietrich* v. *Dietrich*, (4 *Watts* 167) ; *Commonwealth* v. *Eberle*, (3 *Serg. & Rawle* 9) ; *Dan* v. *Brown*, (4 *Cow.* 483, 92) ; *Rex* v. *Hardwick*, (11 *East* 578, 89), per LE BLANC, J. ; *Bland* v. *Haslerig*, (2 *Vent.* 151) ; *Whitcomb* v. *Whiting*, (*Doug.* 652) ; *Greenl. Ev.* 206, *pl.* 174. Hence where no common object or motive is imputed, as in actions for negligence, the declarations or admissions of one defendant are not admitted against any but himself. *Daniels* v. *Potter*, (1 *Moo. & Malk.* 501). So upon a like principle it is very apparent, where they cannot be admitted against himself without affecting the rights of others who may or may not happen to be parties on the record, that such declarations or admissions ought not to be admitted at all, not even against the party himself making them, notwithstanding he is a party to the record. For nothing could be more unjust than that their rights or interests should be affected by the declarations or admissions, or placed at the disposal of one with whom they have no connection or concern whatever. This principle, as it appears to me, is fully established by a series of our own decisions on the subject, in a manner that ought not now to be questioned, and certainly cannot be disregarded without overturning them. The first I refer to is in the case of *Gallagher* v. *Rogers*, (1 *Yeates* 390), where land having been devised by A to his widow for life, remainder to B, evidence of declarations by the widow that the will was made by her undue influence and imposition practised on the testator, was ruled to be inadmissible in an action brought after her death by the remainder man to recover the land. It is true that the court seem to have thought that the evidence might have been admitted against the widow in a suit brought by her, but it cannot be supposed for a moment that the court would have thought so in a case where the admission of it would have tended necessarily to affect the rights of the remainder man as well as those of the widow. In *Lightner* v. *Wike*, (4 *Serg. & Rawle* 203), the declarations of a person named as executor and devisee in the will, were held to be inadmissible as evidence in an action in which the validity of the will was in question, in which he was not a party and would have been a competent witness. And in *Bovard* v. *Wallace*, (4 *Serg. & Rawle* 499), and *Nussear* v. *Arnold*, (13 *Serg. & Rawle* 323), it was adjudged by this court that the declarations of one of several devisees were inadmissible to invalidate the will upon an issue *devisavit vel non*. And again in *Dietrich* v. *Dietrich*, (4 *Watts* 167), in note, it was decided by the unanimous opinion of this

court, that the declarations of one of the devisees in the will, the principal one too, and a party to the record, were inadmissible to prove the invalidity of the will on the trial of the issue *devisavit vel non.* This last case is in every particular like the present, and cannot in any manner whatever be distinguished from it.

But the force and authority of this last decision is attempted to be impaired, if not annulled, by a division of opinion in the court subsequently on the same question in the same cause, when a change had been produced in some of the members of the court arising from death or otherwise. See 1 *P. R.* 306. The only reason, however, given in support of the opinion of the two judges, who dissented from the prior decision of this court in *Dietrich* v. *Dietrich*, appears, in my humble judgment, to be insufficient to distinguish it from or take the case out of the principle established in the previous cases, which were then and have been now referred to. The ground of distinction taken was, that in *Dietrich* v. *Dietrich*, the devisee, whose declarations had been admitted in evidence by the court below, was a party on the record to the issue, whereas in *Bovard* v. *Wallace* and *Nussear* v. *Arnold*, the devisees, whose declarations were offered in evidence, were not parties on the record. But the interest of the persons named as devisees in the will in each case, was several and not joint; and when it is considered that the verdict and judgment rendered upon an issue *devisavit vel non,* ordered by the Register's Court for the purpose of passing on the validity or invalidity of the writing as a will, has the same effect and is alike binding upon all those named as devisees in it, whether parties on the record to the issue or not, it makes it difficult, if not impossible, to assign any good reason why the rule in regard to their admissions or declarations being inadmissible in evidence on the trial of such issue should not be the same, whether they be parties on the record or not. It must be admitted, however, that a diversity of opinion exists among juridical men in regard to the admissibility of such evidence, and that decisions have been made in favour of and against its admissibility by the different courts of some of our sister States. But even supposing it to be doubtful which is right, I consider that we are bound to follow and abide by our own, which show clearly, as it appears to me, that it is inadmissible. And I am willing to do this the more cheerfully, as I am satisfied that they are in accordance with reason and justice.

The second error, which we come to now, is an exception to the opinion of the court rejecting evidence offered by the defendants below, tending to show that Jacob Root, the testator, furnished his son John with money some fourteen or fifteen years before to buy a farm. It is alleged that this evidence ought to have been received, as it would have proved, in connection with other evidence, that John had a greater portion of the testator's estate given to him by the will than was consistent with an intention to

divide the estate equally among his children.   But how does it appear that it was the intention of the testator to distribute his estate equally amongst his children?   It certainly does not appear on the face of the instrument itself.   On the contrary, it appears pretty clearly that such was not his intention; for it is manifest that he has given more to his sons and their issue or children than he has done to his daughters.  This, however, furnishes no evidence of imbecility of mind or want of capacity to make a will; for it is every day's practice in men of perfectly sane minds to make such inequality in the distribution of their estates by their wills amongst their children.   Though it may be proper, where a will is impeached for imbecility of mind in the testator, accompanied by fraudulent practices of the devisees, for the jury to look into the will itself, and see whether the unreasonableness of the provisions contained therein be such as to strike the common mind with a sense of their injustice, taking into view the state of the testator's property, family, and the claims of particular individuals upon him, yet it is conceived that parol proof of the circumstance of his having made an advancement to one of his sons some ten or twelve years anterior to making his will, without making any mention of it therein, or having charged the son with it in any way, either in his books or otherwise, would be very unsafe evidence from which to infer inability to make a will, or that he was *induced* by the fraudulent practice of such son and devisee to make it differently from what he would otherwise have done.   Under the circumstances of this case, as disclosed by the evidence which had been given at the time the evidence mentioned in the exception was offered, we think the evidence so offered was properly rejected by the court.

The fifth error is an exception to the opinion of the court, overruling an objection made by the defendant to the admission of an account or book in writing, made by the order of the testator and signed by him, containing a statement of monies paid or advanced by him to his three sons-in-law, John Albright, John Hauberger, and Daniel Hauberger, amounting to the sum of $900 paid to each, which he mentions and refers to in his will, thereby declaring that the same " shall be their legacy in full out of my estate." It was objected to on the ground that the witness, who testified to his having written it for and at the request of the testator, testified also that he transcribed it from another paper which was destroyed; and therefore not being a book of original entries, it was improperly admitted by the court in evidence.   But it is a mistake to suppose that it was either offered or received in evidence as a book of original entries.   The testator, by referring to it in his will, had made it as it were a part thereof, and under this view we think it was admissible.   Besides, having mentioned and referred to it in his will, it was some evidence to show his presence of mind and such knowledge of his affairs at the time

[Hauberger v. Root.]

of making his will as indicated capacity on his part to make it; as also the propriety of mentioning it, in order to satisfy every one as to the reason why he did not give them more by his will.

The sixth error is also an exception to the opinion of the court, overruling an objection made by the defendants below to the admission of evidence offered by the plaintiffs there, to prove how David M. Root, one of the plaintiffs, said he came by a note or bond belonging to the testator, which he had in his possession before and at the time of the testator's death, and which one of the defendants' witnesses testified that the testator, in his last illness during the week in which he died, said that David M. Root had taken from him (but David was not present when he said so). If the witness testified truly as to what the testator said about David's having taken his bond of $200, it was evident that he intended to charge David with having taken it without his consent, for he said at the same time that he would not trust David further than he could see him, and that was not far, as his eyesight had become very dim, and then mentioned the taking of the bond as his reason for not trusting him. This evidence could only have been given to excite a prejudice in the minds of the jury against David, who was one of the plaintiffs and one of the executors named in the will. In order however to remove this effect, as also any other that might be produced, the plaintiffs proved that David produced the bond at the time of appraising the testator's personal estate, and had it inserted in the inventory as a part thereof, and further offered to prove that David mentioned at the same time that it was given to him for collection by the testator in his lifetime. An objection to this offer was made by the defendants, which the court overruled, and is the same which is made the foundation of the sixth error. We think it would have been treating David unfairly, not to have permitted him to show that he acted correctly in regard to the bond, and to put the defendants at defiance; and to show, if they could, that he had ever acted otherwise.

Judgment affirmed.